STATE, PLAINTIFF-APPELLEE, v. BARTON, ALIAS ALFRED DORSTEK, DEFENDANT-APPELLANT.

Ohio Appeals, Second District, Montgomery County.

No. 2654. Decided October 24, 1961.

*Mr. Paul R. Young*, prosecuting attorney, for plaintiff-appellee.

*Mr. George J. Gounaris*, for defendant-appellant.

KERNS, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Montgomery County rendered upon the verdict of a jury finding the defendant-appellant, Alfred Barton, guilty of armed robbery.

At the trial, Barton testified in his own behalf and, on cross-examination by the prosecution, was asked about a prior conviction of a crime which he admitted.

The prosecutor then asked the following questions:

"Q. Have you ever been arrested and convicted of anything else?

"A. To my knowledge, I don't remember.

"Q. To your knowledge?

"A. Yes.

"Q. Have you ever been in the District Court of Newton, County of Middlesex in the State of Massachusetts?

"Mr. Gournaris: I object. This has no relevance in this matter. It has not been gone into on direct examination.

"The Court. Overruled.

"Mr. Young: (continuing)

"Q. What is your answer to that question?

"A. Yes, I have been.

"Q. What were you in that court for?

"A. At that time, I don't remember.

"Q. You don't remember? Were you not charged with the criminal offense in the State of Massachusetts?

"A. I received a misdemeanor but not a criminal offense. If you can prove it, I would like you to prove it. A misdemeanor is a lot smaller than a felony case.

"Q. You say this was not a criminal offense? What were you charged with?

"A. I was brought before a judge as a criminal offense but they have proved different.

"Q. Would you consider breaking and entering a criminal offense?

"A. Breaking and entering, it all depends on who lives in the property and what belongs at the property and if you live at the property.

"Q. It was a dwelling house at 21 Gramont Avenue—

"Mr. Gournaris: (interposing) Objection.

"The Court: Sustained.

"A. Does it say I lived at that address?

"Mr. Young: I have no further questions at this time, Your Honor."

In the absence of any further evidence of a conviction, the questions asked by the prosecution concerning previous *charges* against the defendant were clearly improper. *Wagner* v. *State,* 115 Ohio St., 136; *State* v. *Cole,* 107 Ohio App., 444; *City of Troy* v. *Cummins,* 107 Ohio App., 318. See also *Kornreich* v. *Industrial Fire Ins. Co.,* 132 Ohio St., 78; *State* v. *Hickman,* 102 Ohio App., 78; *Chambers* v. *Robert,* 110 Ohio App., 472.

But before a reversal may be ordered because of this impropriety, it is mandatory that the reviewing court find from the record that the defendant was prejudiced thereby or was prevented from having a fair trial. *State* v. *Huffman*, 131 Ohio St., 27; *State* v. *Hickman*, 77 Ohio App., 479. The entire record must therefore be tested in the light of Section 2945.83, Revised Code, which so far as applicable to this case, provides:

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:

"* * *

"* * *

"(C) The admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby;

"* * *

"(E) Any other cause unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

In applying Section 2945.83, Revised Code, a brief review of the evidence will place the assigned error in more accurate perspective.

Marlow's Super Market which is located in Kettering, Ohio, was robbed by two armed men at about seven o'clock in the morning on September 3, 1960. The men gained admittance to the store through a rear door which was opened by James Sturm, the assistant manager. Neither of the men was masked or disguised. One carried a gun, the other a knife. Sturm and the defendant both worked at Marlow's from December 15, 1959, until about April 15, 1960, and occasionally had gone to lunch together during that time.

At the trial, Sturm positively identified the defendant as the man carrying the gun, and testified that he and the defendant exchanged greetings when they first met at the rear of the store—one saying, "Hi, Jim" and the other, "Hi, Al." This exchange took place in the presence of Edmund Brunk, who had worked with the defendant at Marlow's for approximately three and one-half months. He, too, positively identified the defendant. Two other witnesses, Edward Goodpaster and Bernard

Siegfried, were also at the rear of the store when the two men were admitted. Both of these witnesses identified the defendant as the man carrying the gun who robbed the store.

The witness Sturm testified that he thought the defendant was "kidding," until "Al had me around the neck and was leading me with the gun in my ribs up to the courtesy counter."

Going toward the front of the store to the courtesy counter, they encountered Marie Zickefoose, another employee who had worked with the defendant at Marlow's for four months. She testified that she addressed him by his first name when she first saw him on the morning of the robbery, and at the trial, she too, positively identified Al Barton as one of the men who robbed the store.

These five positive identifications are interspersed in a record which contains overwhelming evidence against the defendant. Sergeant John Murray, who returned Barton to the State of Ohio after his arrest, testified as follows concerning a conversation with the defendant:

"A. The conversation was relative to the armed robbery of Marlow's and at that time the defendant stated to me that he knew there was more money in the safe but he had to get out of the market because he saw the police coming and he told me about fleeing the scene in his car and just as he was leaving the parking area of Marlow's, he heard the policeman's bullet hit the car and he had fled in the car in company with an Alicia Maki in the front seat and a Larry Rice in the back seat. They fled at a high rate of speed and they approached the railroad tracks at Dorothy Lane and he said he seen a police car coming in the opposite direction. Barton at this time was driving west on Dorothy Lane and saw the police car approaching east and he thought he was going to be stopped at that point and when the car continued on past him, he immediately sped from that location. In fact he told me at the intersection of Dorothy Lane and Wilmington, he run the red light at 100 miles an hour and proceeded to say that he took the back roads to the new freeway and arrived in record time in Cincinnati and he parked the car, a red Dodge Dart, near where he had an apartment in Cincinnati.

"Q. Was anyone else present at the time of this conversation, Sgt. Murray?

"A. Yes.

"Q. Who?

"A. Detective Ralph Young."

This testimony was substantially verified by Detective Young.

In all, the prosecution presented fifteen witnesses, and the cross-examination of each tends to solidify the pointed effect of their direct testimony.

The only witness to testify for the defense was Barton himself who claimed that he was in Jacksonville, Florida on the day of the crime.

A rebuttal witness, Sarah Wolke, the caretaker of an apartment building in Cincinnati, testified that she rented an apartment to the defendant during the latter part of August, and that she last saw the defendant in front of the apartment building on September 4, 1960. Two other rebuttal witnesses testified concerning a bogus check passed by the defendant in Dayton, Ohio, on August 26, 1960.

The unilateral nature of the evidence completely overshadows the possibility that the defendant may have been prejudiced by the alleged error, and after giving due consideration to said evidence, we are convinced that the verdict of the jury would not have been different had the error complained of not been committed. The first assignment of error will therefore be overruled.

The second assignment of error, as stated by the defendant, is "that the court erred in overruling defendant's motion for a 72 hour adjournment so that defendant under the circumstances could obtain attendance of his alibi witnesses."

In overruling the defendant's motion, the trial court commented that "the Court and the State have made every reasonable effort to accede to every request of the defendant. There is no reason to believe that a delay will accomplish anything." This observation has support in the record. The court and the State assured defendant-appellant that his alibi witnesses would be reimbursed by the State for any expense incurred by them. It also appears from the record that the defendant himself was financially able to guarantee the attendance of the witnesses from Florida if they were inclined to come to Dayton to

testify in his behalf. The defendant testified that he had written to the alibi witnesses "four or five times," and their belated telegram gives no assurance that they would testify at a later date. There is nothing definite in the record to indicate that a delay would accomplish anything.

It is well established that a motion for a continuance is addressed to the sound discretion of the trial court, and its action cannot be reversed on error unless it clearly appears, from all the facts and circumstances, that there has been an abuse of this discretion, operating to the prejudice of the party in the final determination of the case. 3 Ohio Jurisprudence (2d), 730, Section 756.

In the light of this rule, and upon further examination of the entire record, we cannot say that the trial court abused its discretion.

We find no prejudicial error in the record. The judgment will be affirmed.

CRAWFORD, P. J., and SHERER, J., concur.