THE STATE OF OHIO, APPELLEE, *v.* WHITMAN, APPELLANT.

(No. 9-181—Decided April 30, 1984.)

*Mr. John E. Shoop,* prosecuting attorney, for appellee.

*Mr. Spiros E. Gonakis* and *Mr. David J. Lombardo,* for appellant.

DAHLING, J. This is an appeal from a judgment of the Court of Common Pleas, Lake County, in which after a trial by jury, the defendant was found guilty of counts one and two, kidnapping, in violation of R.C. 2905.01, and counts three and four, rape, in violation of R.C. 2907.02(A)(3). He was sentenced to seven to twenty-five years in the Ohio State Penitentiary on count two, to run concurrently with counts three and four. Defendant was also sentenced to life imprisonment in the Ohio State Penitentiary on counts three and four. Counts three and four are to run consecutively with each other. The court found no separate animus in the commission of count one and handed down a sentence of conviction only as to count three.

During the late hours of March 6,

1982 or early morning hours of March 7, 1982, the defendant allegedly engaged in sexual intercourse with the twelve-year-old babysitter of his estranged wife. The rape occurred in the defendant's marital residence.

Likewise, on March 22, 1982, the defendant allegedly forced the same babysitter to engage in sexual intercourse. March 27, 1982, the girl told her mother about the rapes and two days later was examined by a physician. The girl was referred to the counseling service of the Lake County Mental Health Department.

On April 23, 1982, the defendant was charged with two counts of kidnapping, two counts of rape, and one count of gross sexual imposition. On September 9, 1982, the jury returned guilty verdicts on the rape and kidnapping counts. This appeal followed.

Assignments of Error Nos. I, III and VI

"I. The trial court erred in its admission of psychiatric testimony on rape trauma syndrome."

"III. The trial court erred in admitting evidence of results of out-of-court experiments related to the rape."

"VI. The trial court erred in admitting character and other acts evidence."

The defendant's first, third, and sixth assignments of error will be discussed together. They are without merit.

All of these assignments relate to alleged errors in the admission of evidence.

To properly evaluate the admission of expert testimony evidence related to "rape trauma syndrome," it must be subjected to the following tests: Whether or not the evidence (1) is relevant and material, (2) is within the view of the average layman, (3) has acceptable scientific reliability, and (4) has probative value that outweighs its prejudicial impact.

The testimony is clearly relevant and material to the alleged rape. The post-shock reactions of a rape victim are important to a proper corroboration of testimony of the victim that she was, in fact, raped. Likewise, these reactions may manifest themselves in a lesser degree when observed by the average layman. Expert opinion is necessary to properly interpret the reactions. This is probably more important in child rape cases than in adult situations.

Review of the handbooks, journals, and textbooks cited by the appellee successfully rebut the defendant's claim of a lack of scientific foundation or knowledge on the subject matter. The American Medical Association adding the understanding and treatment of rape victims exhibiting rape trauma syndrome is additional proof of the vitality of the theory.

Lastly, it is clear that although the admission of evidence of this nature has a prejudicial impact on the defendant's claim of innocence, the probative value of this testimony clearly outweighs the prejudicial impact.

As noted in the discussion above, the testimony of the expert witness tended to explain the psychological trauma experienced by the rape victim.

Any error committed by admission of results of the time it took two boys to run from nearby Lawsons to the defendant's marital home is harmless in nature. We find no error.

Finally, admission of evidence of other acts of the defendant is proper pursuant to R.C. 2945.59. That section states in pertinent part: "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, * * * may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding

that such proof may show or tend to show the commission of another crime by the defendant."

Assignment of Error No. II

"II. The trial court erred in permitting the testimony of the rape victim's social worker."

The second assignment of error presented by the defendant is with merit.

The defendant contends that the testimony of Cindy Schmidt was improperly admitted by the trial court. The court treated Schmidt as if she were a qualified expert in the study of rape trauma syndrome, although that is clearly not the case. Schmidt testified to the following:

"Q. How many diagnoses have you participated in involving Rape Trauma Syndrome?

"A. At the moment just this one.

"Q. I'm sorry?

"A. At the moment this case; it's a relatively new diagnosis and —

"Q. Let me ask you this. Have you participated in any diagnosis of Post-Trauma Stress Syndrome?

"MR. PATTERSON: Objection.

"THE COURT: Overruled.

"A. Yes, I have.

"Q. How many?

"A. Say one.

"Q. Other than this one?

"A. It would be this one."

Nonetheless, she was permitted to testify to the following:

"Q. Okay. Would you tell the jury what was done at that initial intake meeting?

"MR. PATTERSON: Objection.

"THE COURT: Overruled.

"A. I began a diagnosis and treatment.

"Q. How did you do that?

"A. I would meet — I met individually with Melanie to learn what types of symptoms she was experiencing and what she felt the cause of the symptoms were.

"Q. And did you learn that information?

"MR. PATTERSON: Objection.

"THE COURT: Overruled.

"Q. Did you learn that information?

"A. At the first session Melanie stated that —

"MR. PATTERSON: Objection.

"Q. Were these statements —

"MR. VRANEKOVIC: The judge hasn't ruled on his objection.

"THE COURT: Overruled.

"Q. You may proceed.

"A. At this first session she stated that —

"MR. PATTERSON: Objection to that.

"THE COURT: Overruled.

"A. — her symptoms began after the rape on March of '82.

"Q. What symptoms did she complain of?

"MR. PATTERSON: Objection.

"THE COURT: Overruled.

"A. She complained of having problems sleeping, having problems eating, trouble concentrating, and having suicidal thoughts.

"Q. Okay. And did she communicate any other symptoms to you or did you observe any?

"A. Her affect was very —

"MR. PATTERSON: Objection.

"THE COURT: Overruled.

"A. — very controlled. She appeared anxious, depressed.

"Q. By affect, would you explain that, please?

"A. That's just the way — her body language. At one point she went to have a cigarette and her hands were shaking as she went to have a cigarette.

"Q. Okay. Now, how many sessions did you visit with Melanie * * *?

"A. I had six sessions.

"Q. And what was done during those sessions?

"A. Well, after we determined the diagnosis, then we began treatment.

Our main focus of work was around Melanie's suicidal thoughts.

"Q. Okay. So they were geared to what, with regard to the suicide?

"MR. PATTERSON: Objection.

"THE COURT: Overruled.

"A. They were geared toward finding out the reasons that she was having those thoughts and to try to give her other, more positive ways of solving her concerns, and to make sure that she was safe and that nothing would happen to her.

"Q. Now, after all of the sessions that you participated in with Melanie, did there come a time when you formed a diagnosis or a conclusion as to what was bothering Melanie? * * *"

The court erred in admitting this testimony, in that the manner of its presentation added credibility to the evidence that was unwarranted. It therefore tended to prejudice the defendant's case. The time honored principle related to admission of expert testimony is contained in *Hartford Protection Ins. Co.* v. *Harmer* (1853), 2 Ohio St. 452, and reiterated in the Staff Note to Evid. R. 702, as follows:

"The rule is stated in language identical to that of Federal Evidence Rule 702.

"Rule 702 restates the law of Ohio as to the admissibility of testimony from expert witnesses.

"In *Hartford Protection Insurance Co.* v. *Isaiah C. Harmer* (1853), 2 OS 452, the general rule that a witness was restricted to facts in his testimony was stated as well as the exception to the general rule in the case of an expert witness. The court said, at 457:

"[']In everything pertaining to the ordinary and common knowledge of mankind, jurors are supposed to be competent, and, indeed, peculiarly qualified to determine the experienced connection between cause and effect, and to draw the proper conclusion from the facts before them. But they are selected with no view to their knowledge of particular services, trades, and professions, requiring a course of previous study and preparation. As questions connected with these will very often arise, and as the law deprives the jury of no reliable means for ascertaining the truth, it allows them to be aided, in making the proper application, by the opinions of witnesses possessing peculiar skill in those particular departments. But this is only permitted where the nature of the question at issue is such that the jury are incompetent to draw their own conclusions from the facts, without the aid of persons whose skill or knowledge is superior to their own, and such as inexperienced persons are unlikely to prove capable of forming a correct judgment upon, without such assistance.['] *Fish* v. *Dodge*, 4 Denio 311.

"The basic principle is restated in *McKay Machine Co.* v. *Rodman* (1967), 11 OS 2d 77, 40 OO 2d 87, * * * where it was held in the first paragraph of the syllabus:

"[']In all proceedings involving matters of a scientific, mechanical, professional or other like nature, requiring special study, experience or observation not within the common knowledge of laymen, expert opinion testimony is admissible to aid the court or the jury in arriving at a correct determination of the litigated issue.[']

"The rule provides that the expert witness may testify as to scientific, technical, or other specialized knowledge in the form of an opinion or otherwise. The Advisory Committee's Note to Federal Evidence Rule 702 says that the assumption that experts testify only in the form of opinion is logically unfounded and that the rule recognizes that the expert may give an exposition of relevant principles leaving the trier of the fact to apply the principles to the facts found.

"Although Ohio cases discuss expert testimony in terms of opinion and it is

normal for the expert to express his opinion, in response to fact he has observed or which he assumes to be true, the absence of an opinion does no violence to Ohio practice. Most expert witnesses provide instruction to the jury in the form of facts and opinion as to the principles involved and upon which the expert opinion is ultimately based. It is not unusual to have a direct conflict in the opinions of experts based upon the same set of facts. The purpose of a jury is to determine the correctness of the divergent opinions. *The Springfield Gas Co.* v. *Herman* (1933), 46 OApp 309, 188 NE 733. The jury makes that determination by weighing the testimony, applying the usual test of credibility, finding the presence or absence of facts constituting the hypothesis, and by drawing its own inferences and conclusions from the principles explained."

It is clear that the testimony of Schmidt does not meet these standards and was, therefore, improperly admitted. * * *[1]

### Assignment of Error No. VIII

"VIII. The trial court erred in failing to declare a mistrial due to the testimony of Dorothy Desellems."

The eighth assignment of error presented by the defendant is with merit.

The defendant requested a new trial in the trial court due to the admission of allegedly impermissible hearsay testimony offered by the state's witness, Dorothy Desellems. The request for new trial was overruled by the trial court.

Generally, "[b]efore a reversal may be ordered because of the admission or rejection of any evidence offered against or for the accused, it is mandatory that the reviewing court find from the record that the defendant was prejudiced

thereby or was prevented from having a fair trial." *State* v. *Barton* (App. 1961), 91 Ohio Law Abs. 57, paragraph two of the syllabus. Additionally, where evidence is improperly admitted, the defendant's conviction should be set aside if it appears that "there is a reasonable possibility that the admission of the evidence may have contributed to the conviction." *State* v. *Waldbillig* (1964), 1 Ohio St. 2d 50 [30 O.O.2d 28], paragraph two of the syllabus. "[A] reviewing court is not permitted to reverse a judgment of conviction 'unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial.'" *State* v. *Fouts* (1947), 79 Ohio App. 255, paragraph seven of the syllabus.

This portion of Desellems' testimony establishes the prejudicial nature of her comments:

"Q. * * * When you spoke to your daughter, Cindy, concerning the incident involving Melanie * * *, what did you tell her?

"MR. PATTERSON: Objection.

"THE COURT: Better establish that she told her anything, first.

"Q. When you spoke with Cindy concerning this incident, did you talk about what had happened to Melanie?

"A. Yes, we did.

"Q. What did you say to her regarding the incident?

"MR. PATTERSON: Objection.

"THE COURT: Overruled.

"Q. You may answer.

"A. All right. She was sitting there when we were filling out the statements and —

"MR. PATTERSON: Objection. Who is sitting there?

"A. Cindy was. And she learned what had happened to Melanie. And she told me, the same thing had happened to her.

"MR. PATTERSON: Objection.

"THE COURT: Sustained. The jury will disregard the statement."

---

[1] Reporter's Note: The text of the opinion as it appears herein was abridged by Judge Dahling.

It is clear from review of the comments made by the court in its dismissal of count five that the judge realized the damage to the defendant's case. The court stated:

"THE COURT: What have we been arguing about for a week and a half? Rape, right? The evidence has all been rape. The accusation has been rape. The word rape has been thrown around the room like it's wallpaper. We're decorating the walls with it. There is no other idea or concept, in anyone's mind except rape, and for this woman to say the same thing happened to my daughter, leaves no other impression in anyone's mind except that there was a rape.

"I don't think I have a choice, gentlemen, I'm going to dismiss Count 5. I don't think that I can erase from the jury's mind, in view of everything that has happened in this case, that I can once more tell the jury to disregard this kind of evidence. I think this is the straw that broke the camel's back. I've been telling you for days and days and days to clean up your act, to present evidence and not just garbage, and you persist in doing so. Now I think it has gone too far. I don't think I can repair it by an instruction. And for that reason I have got to dismiss Count 5."

The court should have granted the requested mistrial as all indications suggest that the fairness of the defendant's trial was seriously jeopardized by the testimony of Desellems. * * *

The judgment is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

FORD, J., concurs.

COOK, P.J., dissents.