DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Maumee Municipal Court which, following a jury trial, found appellant, Lee J. Schlagheck, guilty of operating a motor vehicle while intoxicated in violation of R.C.4511.19(A)(1). The trial court found appellant guilty of speeding in violation of R.C. 4511.21(A)[1]. For the reasons stated herein, this court affirms the judgment of the trial court.
Appellant sets forth the following four assignments of error:
Assignments of Error
 I. The trial court erred when it did not declare a mistrial or even give a limiting instruction when the arresting officer stated in front of the jury that Defendant had been previously convicted DUI. [Sic]
 II. The Trial Court erred when it allowed opinion evidence of the arresting officer to come before the jury when the arresting officer was never found to be an expert.
 III. The Defendant was denied his Sixth Amendment Right to effective counsel.
 IV. The decision of the jury was against the manifest weight of the evidence.
The following facts are relevant to this appeal. On July 13, 1999, appellant was charged with violation of R.C. 4511.19(A)(1) and 4511.21(A). At trial, the state trooper who stopped appellant testified that while the trooper was stopped at a stoplight at an intersection, he observed a vehicle pass him at a high rate of speed. The trooper testified that he pursued the vehicle, got within approximately fifteen to twenty car lengths and, although he set his patrol car speed at ninety miles per hour, the other vehicle continued to pull away. The trooper testified that he put his foot all the way on the accelerator, went after the vehicle and stopped the vehicle which appellant was driving. The trooper also testified that when he came in contact with appellant, the state trooper noticed an odor of an alcoholic beverage; the trooper had appellant come back to the patrol car. The trooper testified that appellant's speech was slightly slurred and his eyes were glassy. The trooper testified that he then administered the horizontal gaze nystagmus ("HGN") test and obtained six of six possible clues from appellant. The trooper testified that he wanted to administer other field sobriety tests, the walk and turn and the one leg stand; however, appellant took one step of the walk and turn and then stated he was unable to perform the test. Appellant was arrested and taken to the patrol post for a breathalyser test; appellant declined to take the test.
At trial, using a scale drawing that he created of the location where his vehicle was observed and the location where his vehicle was stopped, appellant testified that there was not a highway patrol vehicle at the intersection although he saw a vehicle about a mile down the road. Appellant also used pictures he had taken of these areas during his testimony. Appellant, now thirty-six years old, also testified about injuries he sustained at age sixteen when he was struck by a hit and run driver; appellant testified that he sustained a severe head injury and had six bolts and pins placed in his left leg to repair it. Appellant testified that as a result of these injuries, his left leg is numb causing him trouble with his balance and walking and causing him to break his left ankle approximately six times. Appellant testified that he has a limp. Appellant also testified that he told the state trooper he could not do the field sobriety tests because he was in a serious car accident. Appellant testified that he has double vision in both eyes, a nystagmus problem and a slight speech impediment causing him trouble with pronouncing the letter "s." Appellant testified that he consumed approximately one and a half beers at his friend's house between 6:00 p.m. and 10:00 p.m. and one more beer between 10:00 p.m. and 2:30 a.m. at this friend's bar where he also helped clean and wipe tables and where he may have spilled beer on himself while cleaning up the bar.
On cross-examination, appellant testified that he refused to take the breath test because he had no trust in the state trooper. Appellant testified that the trooper told him he was going "to get him with a DUI whether [he] failed or passed the test." Appellant also testified that he built test equipment for a living and "an operator can actually change the test results based on the gain settings." Appellant admitted on cross-examination he was not familiar with either the calibration procedures at the Ohio State Highway Patrol or the testing procedures the troopers are required to perform on the breathalyser equipment. Appellant also testified that he had wanted to have an independent test done as he had been advised by the trooper but that he could not get to a hospital to have a test done.
A semi-retired ophthalmologist from California, who currently teaches and testifies, testified on behalf of appellant. Based upon his review of appellant's medical records and three examinations of appellant, once the evening before and twice on the morning of trial, this ophthalmologist testified that appellant has a micro nystagmus which is present while looking straight ahead and which becomes accentuated when appellant's eyes move off the center. The ophthalmologist testified that because appellant has nystagmus all the time, that the HGN test would not be a definitive test. The ophthalmologist also testified that the HGN test would not be an appropriate test for appellant. The ophthalmologist testified that appellant has an abnormal gate in that he hesitates and is not accurate in his gate and that appellant's speech impediment could be referred to as a slur or difficulty speaking clearly. The ophthalmologist testified that he had trouble understanding appellant.
On cross-examination, the ophthalmologist admitted that he lists his curriculum vitae on the Internet; that his fees are $450 an hour for case review and analysis, $700 an hour for deposition and trial time, and that his hotel and flying expenses were paid by appellant. The ophthalmologist was also cross-examined on a letter that he had written to appellant's defense counsel on February 7, 2000, in which the ophthalmologist stated "the poor lighting conditions and the methodology used by the Highway Patrol officer" given appellant's existing nystagmus "would invalidate any allegation that [appellant] was intoxicated in any way according to the information given to me by all parties to date." The ophthalmologist admitted that he had not examined the trooper's patrol car and admitted that he did not know if there was sufficient lighting conditions for the trooper or not. The ophthalmologist also admitted that he did not administer the HGN test to appellant after he had consumed any alcohol. The ophthalmologist admitted that alcohol will intensify nystagmus many times but stated that sometimes alcohol will not intensify nystagmus but minimize it. He also admitted that knowing alcohol can intensify nystagmus, he did not do an experiment on appellant by having appellant consume alcohol to see if there was a difference between his natural nystagmus and the nystagmus caused from the consumption of alcohol.
A friend of appellant's since grade school, who was with appellant when he was stopped and ultimately charged on July 13, 1999, testified that appellant arrived at the friend's house at approximately 5:30 p.m. and worked doing car repair until approximately 10:30 p.m. The friend also testified that appellant had two beers during this time. The friend testified that he and appellant went to the friend's bar at approximately 11:00 p.m. and appellant had one or two beers. The friend testified that he and appellant wiped tables and cleaned the bar before appellant began driving the friend back to his house. The friend testified that he did not see a state trooper stopped at a light at the intersection; that the fastest speed appellant drove was sixty to sixty-five miles per hour; and that although appellant wanted to be taken to a hospital, the friend was too tired. On cross-examination, the friend testified that while appellant was with him appellant had four beers. In regard to how fast appellant was driving, the friend on cross-examination admitted that he was not looking at the speedometer and was just estimating when he testified that appellant's fastest speed was sixty to sixty-five.
In his first assignment of error, appellant argues that the trial court erred when it did not declare a mistrial or give a limiting instruction. This court finds no merit in this assignment of error.
Appellant focuses upon the following as a basis for his argument in this assignment of error:
 Defense Counsel: "Now, I believe you testified that you took [appellant's] passenger home?"
Trooper: "Correct."
Defense Counsel: "You has his vehicle towed?"
Trooper: "Correct."
 Defense Counsel: "You wouldn't allow the passenger to drive the vehicle?"
Trooper: "I believe second offense is a mandatory tow."
Defense Counsel: "Excuse me."
Trooper: "It's a mandatory tow — "
THE COURT "Wait. Counsel approach."
Appellant argues that the above exchange placed evidence that he had been previously convicted of a prior DUI and that this tainted the jury; that the trial court should have declared a mistrial or given a curative instruction and that this court should apply the plain error analysis because appellant's trial counsel failed to object or move for either a mistrial or request a curative instruction. Appellant cites State v.Blue (Mar. 19, 1987), Union App. No. 14-85-23, unreported, in support of his argument that the jury was tainted by the cited exchange. However,Blue is so factually dissimilar that it provides no support for appellant's argument.
In Blue, the appellate court found that the state improperly introduced judgment entries and the attendant citations from prior OMVI convictions after the trial court denied the defendant's motion to exclude evidence of these prior OMVI convictions; the appellate court noted that the defendant's prior OMVI convictions were only relevant to sentencing. In the case sub judice, the testimony of which appellant complains is "second offense is a mandatory tow" which is rather vague and does not specifically refer to a prior DUI conviction.
This court finds the case of State v. Jones (1992), 83 Ohio App.3d 723, closer to the circumstances of the case sub judice. In Jones, on cross-examination, the arresting officer when challenged by defense counsel as to his ability to recognize the defendant because of the distance involved, stated:
 "I believed it to be him under the circumstances, from my prior knowledge of [the defendant]. I've dealt with him. I've arrested him in prior incidents." Id. at 736.
The trial court sustained a defense objection but denied a motion for mistrial. In overruling the defendant's assignment of error arguing that the trial court erred in failing to grant a mistrial, the appellate court stated:
 "It was error for the officer to have testified that he had arrested Jones on prior occasions. Generally, reference to prior arrests of the defendant is prohibited. See, e.g., State v. Hector (1969), 19 Ohio St.2d 167, 48 O.O.2d 199, 249 N.E.2d 912. However, the trial court did sustain the objection to the statement, and the witness reformulated his answer. The statement was not inflamma-tory, did not appear to be intentional, and the questioning did not dwell on the subject.
 "It is within the trial court's sound discretion to determine whether a reference in the testimony to a forbidden subject merits the extreme remedy of a mistrial. State v. Reynolds (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497. We conclude that the trial court did not abuse its discretion in determining that a mistrial was not merited as a result of Officer Christy's unfortunate remark. (Emphasis added.)" Id. at 737.
In the case sub judice, there was no further discussion about what the previous conviction had been. Thus, this court is not persuaded that the evidence tainted the jury verdict.
Appellant also argues that this court should apply the plain error doctrine to the first assignment of error. As noted by the Ohio Supreme Court in State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus:
 "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."
Furthermore, an alleged error "does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." Id., paragraph two of the syllabus.We have thoroughly reviewed the record in this case and conclude that the officer's testimony of which appellant complains was not intentional and there was no further discussion about what the previous conviction had been. Thus, this court is not persuaded that "but for the error, the outcome of the trial clearly would have been otherwise."
Accordingly, appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant argues that the trial court erred when it allowed opinion evidence of the arresting officer to come before the jury when the officer was never found to be an expert. This court finds no merit in this assignment of error.
It is well-established that a police officer may provide lay testimony under Evid.R. 701 as to his or her opinion concerning a defendant's state of intoxication. In re Litterst (June 26, 1998), Lake App. Nos. 97-L-135, 97-L-136, unreported; State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528, unreported. Under Evid.R. 701, a lay witness can give opinion testimony if the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.
Sobriety or lack thereof is commonly recognized by courts to be within the perception of a lay witness. In the present case, the officer stated his opinion that appellant was impaired. This opinion testimony was properly admitted under Evid.R. 701.
Accordingly, appellant's second assignment of error is found not well-taken.
In his third assignment of error, appellant argues ineffective assistance of trial counsel. Appellant argues that his trial counsel was ineffective in eliciting the officer's testimony described in the first assignment of error and failing to move for a mistrial or failing to move to strike the answer. This court finds no merit in this assignment of error.
The standard of review for a claim of ineffective assistance of counsel is as follows:
 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (Citations omitted.)
 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley
(1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus.
The standard for determining whether a trial attorney was ineffective requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. Strickland v.Washington (1984), 466 U.S. 668, 686-687. In essence, appellant must show that his trial, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorneys' deficient performance. Id. at 693-94.
Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id. at 690. A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner.State v. Hamblin (1988), 37 Ohio St.3d 153, 155-56. Thus, appellant bears the burden of proving that his trial counsel was ineffective. Id.;State v. Martens (1993), 90 Ohio App.3d 338, 351.
It is well established that the constitution does not guarantee a perfect trial or even the best available defense. The Sixth Amendment guarantee of effective assistance of counsel requires only that defense counsel perform at least as well as an attorney with ordinary training and skill in criminal law. State v. Martens, 90 Ohio App.3d at 351.
Furthermore, appellant must show that his trial counsel's actions or inactions were prejudicial. In order to prevail on this assignment of error, appellant must show that "* * * there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland, 466 U.S. at 694.
A defense counsel's decision not to request a jury instruction or to move to strike the answer can be a trial tactic to prevent emphasizing the information inadvertently elicited. Such trial tactics are presumed to be used by defense counsel as part of a sound trial strategy.Strickland v. Washington (1984), 446 U.S. 668; State v. Thompson (1987),33 Ohio St.3d 1, 10. In the first assignment of error, this court found that the trial court did no err in failing to declare a mistrial. Thus, this court cannot say that appellant's trial counsel was ineffective in not asking to have the answer struck, in not asking for a jury instruction, or in not asking for a mistrial.
This court has reviewed the performance of his trial counsel in light of the errors of practice appellant has asserted. This court concludes, on the state of this record, appellant has failed to demonstrate that his trial attorney's conduct at trial was either ineffective or prejudicial. Appellant has failed to prove that his counsel fell below an objective standard of reasonable representation, and has failed to show any prejudicial result. Furthermore, the "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. * * *" Strickland v. Washington,466 U.S. at 700.
Accordingly, appellant's third assignment of error is found not well-taken.
In his fourth assignment of error, appellant argues that the decision of the jury was against the manifest weight of the evidence. This court finds no merit in this assignment of error.
In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Supreme Court of Ohio stated:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Ohio Supreme Court stated that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The court also noted:
 "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id.
In contrast to sufficiency, the court stated the following in regard to weight of the evidence:
 "* * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Citation omitted.) (Emphasis added by Court.) Id. at 387.
The Ohio Supreme Court also noted that when an appellate court reverses a verdict as against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
In the case sub judice, appellant was convicted of driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). This statute provides that "no person shall operate any vehicle * * * within this state, if * * * the person is under the influence of alcohol * * *." The state had the burden of persuasion with respect to each element of the offense.
It is uncontroverted that appellant was operating his vehicle within the state. The officer testified that he noticed an odor of alcohol immediately during his meeting with appellant. The officer also noted that appellant's eyes were glossy; that his speech was slurred; and that appellant scored six of a possible six indicators on the HGN test. Appellant admitted to having had approximately two and a half beers. Thus, the question presented is whether the evidence introduced by the state demonstrated beyond a reasonable doubt that appellant was under the influence of alcohol.
In his brief, appellant argues he established reasonable doubt on almost every factual issue. Appellant argues that he had an expert testify regarding his nystagmus; his speech impediment; and the cause of his problem with walking. As a general rule, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact to decide. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact is not required to believe any witness/expert. The credibility of witnesses is within the province of the trier of fact. In this case, the jury was clearly within its discretion to disbelieve the testimony of the expert or any witness.
In any prosecution for drunk driving, the state does not have to prove actual impaired driving; instead, it must only show impaired driving ability. To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired. State v. Richards
(Oct. 15, 1999), Portage App. No. 98-P-0069, unreported; In re Litterst
(June 26, 1998), Lake App. Nos. 97-L-135 and 97-L-136, unreported; Statev. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528, unreported. In the instant matter, the officer gave an account of the physiological factors that led him to believe that appellant was intoxicated.
The officer testified regarding the physiological factors that suggested intoxication and stated his opinion that appellant was impaired by alcohol. The officer's opinion testimony was certainly credible evidence tending to support the verdict reached by the jury. Upon reviewing the entire record, we conclude that the jury's decision did not constitute a manifest miscarriage of justice.
After reviewing the record and the reasons discussed in the earlier assignments of error, we conclude that any rational trier of fact could have found that the essential elements of operating a motor vehicle while intoxicated were proven beyond a reasonable doubt.
Accordingly, appellant's fourth assignment of error is found not well-taken.
On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Maumee Municipal Court is affirmed. It is ordered that appellant pay court costs for this appeal.
Melvin L. Resnick, J., James R. Sherck, J., CONCUR.
 ____________________________ George M. Glasser, J.
JUDGE
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] The ticket stated appellant was driving ninety in a forty-five MPH zone. At trial, the prosecutor corrected this to driving ninety in a fifty-five MPH zone.