OPINION
Defendant-appellant, William P. Hurst, appeals from a judgment of the Franklin County Court of Common Pleas whereby appellant was convicted of one count of aggravated burglary, one count of kidnapping, one count of gross sexual imposition and eight counts of rape, pursuant to a jury trial.
Appellant's convictions arose from an incident that took place at the residence of Julie Adams during the evening of January 3, 1997, and the early morning hours of January 4, 1997.
At trial, Julie Adams testified to the following: Julie arrived home on the evening of January 3, 1997, around 10:00 p.m. She lived at 87 North Broadleigh with her sister, Keri Adams, who was still out for the evening when Julie came home.
Julie went to bed by 11:00 p.m. Later, she was awakened by the sound of her bedroom door being opened. She opened her eyes and saw a man, later identified as appellant, standing near her bed. Appellant was wearing rubber gloves and, without saying anything, appellant removed the bedcovers from Julie and pulled up the shirt she was wearing. Appellant began fondling her breasts and genitals, inserted his fingers into her vagina and began kissing her on the mouth. In the process of sitting down on the bed, appellant pushed Julie over in the bed and started kissing her breasts.
Appellant spoke sternly and emphatically. Julie testified that his stern and emphatic tone was the equivalent of him brandishing a weapon. He began saying phrases such as: "Do you want me to eat your pussy?" and "Do you want to come?" Julie asked appellant whether he was going to hurt her. She testified that, although appellant indicated that he was not going to hurt her, she thought she was going to be killed and did not physically resist appellant's attacks because she feared for her life.
At one point, appellant went into the kitchen to get beer. While appellant was in the kitchen, Julie called the police and whispered into the phone that she was being raped. Appellant returned to the bedroom while Julie was on the phone. Julie told appellant that she was calling her sister and appellant told her not to call her sister.
Appellant then began cunnilingus on Julie; inserted his fingers in her vagina and anus; poured beer over Julie's genitals and resumed cunnilingus. At one point, appellant inserted the beer bottle into her vagina. Appellant also obtained a small flashlight, after rummaging through his pockets, and inserted the flashlight into her vagina.
Appellant next told Julie that he wanted her to sit on his face. He laid down on the bed and moved Julie into a position where her vagina was above his head, and her head was above his penis, and told her to put his penis into her mouth. According to Julie, appellant forced her to perform fellatio on him while he resumed cunnilingus and, eventually, appellant engaged in vaginal intercourse. Julie then testified that appellant left her house when police radios could be heard outside. He told her that he would let himself out of the house.
Plaintiff-appellee, state of Ohio, called Columbus Police Officer Mathew Smith to also testify at trial. Officer Smith testified that, at approximately 1:41 a.m. on January 4, 1997, he received a dispatch to go to 87 North Broadleigh. The dispatcher informed the officer that she thought the woman calling from the residence whispered, "[h]elp, I'm being raped." Upon arriving at 87 North Broadleigh, Officer Smith observed, through a window, a man "going forward and back and kind of in a downward motion several times back and forth." Officer Smith noticed on one side of the house that a door leading into a screened-in porch was propped open. He noticed that a door leading into the kitchen from the porch was also open.
Officer Mark Eickholt accompanied Officer Smith. Officer Eickholt testified that an outer screen door to the porch had been propped open by "the little metal pieces that you have to slide" in order to keep such screen doors open. Officer Eickholt further testified that the screen door to the residence was propped open in the same manner, and "the inside door to the house was also open."
Officers Smith and Eickholt testified that they saw appellant walk from the front door across the lawn. According to their testimony, the officers ordered appellant to stop. Officer Smith testified that appellant stopped, dropped a pair of rubber gloves on the ground and said, "[s]he invited me in."
Keri Adams testified that she arrived home on the morning of January 4, 1997, after leaving a bar at 2:00 a.m. She testified that, when she arrived home, the police officers were investigating the scene and Julie had been sent to a local hospital.
Appellant testified as follows: Appellant met Julie outside of his 75 North Broadleigh home on the evening of January 3, 1997. He was outside investigating a loud noise when Julie approached him. They began talking about the loud noise and, eventually, Julie invited him into her home.
Appellant and Julie went in the front door of the home and ended up in her bedroom. Appellant testified that Julie started "kissing on" him and that he started fondling her breasts. Appellant confirmed that several sexual encounters occurred, but denies engaging in vaginal intercourse. He also testified that all sexual activity was consensual. Appellant testified that the sexual encounter ended with Julie kissing him goodnight and appellant leaving through the front door.
At trial, appellant conceded that he was wearing rubber gloves throughout the encounter. He claimed he was wearing the gloves because he was stripping and waxing the kitchen floor before meeting Julie. Appellant also conceded at trial that a flashlight had been used during the sexual encounter. According to appellant's testimony, Julie gave him the flashlight; however, appellant denied inserting the flashlight into Julie's vagina.
As noted above, a jury found appellant guilty as charged on all counts, and the trial court sentenced appellant to fifty-five years in prison.
Appellant appeals, raising four assignments of error:
Assignment of Error One
 THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE, OVER OBJECTION, TO ELICIT TESTIMONY FROM A MEDICAL DOCTOR, POLICE DETECTIVE AND OTHER WITNESSES THAT WAS IMPROPER, IRRELEVANT AND PREJUDICIAL AND WAS INTRODUCED SOLELY FOR THE PURPOSE OF BOLSTERING THE ALLEGED VICTIM'S CREDIBILITY. THIS ERROR DENIED THE DEFENDANT HIS RIGHT TO A FAIR TRIAL UNDER THE OHIO AND FEDERAL CONSTITUTIONS.
Assignment of Error Two
 THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE IS INSUFFICIENT TO SUPPORT SAID CONVICTION.
Assignment of Error Three
 THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON THE DEFINITION OF CONSENT, OVER OBJECTION OF DEFENDANT'S TRIAL COUNSEL, THEREBY DENYING THE DEFENDANT THE RIGHT TO PRESENT A DEFENSE OF THE CHARGES OF RAPE.
Assignment of Error Four
 THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES UPON THE DEFENDANT-APPELLANT.
We begin with appellant's second assignment of error. In his second assignment of error, appellant attacks his convictions as being based on insufficient evidence. We disagree.
Sufficiency of evidence is the legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380,386. When reviewing whether a verdict is supported by a sufficiency of the evidence, an appellate court examines the evidence in the light most favorable to the prosecution and concludes whether any rational trier of fact could have found essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273.
In this case, appellant was convicted of one count of gross sexual imposition in violation of R.C. 2907.05, which makes it unlawful for anyone to have sexual contact with a non-spouse by force or threat of force; and eight counts of rape in violation of R.C. 2907.02, which makes it unlawful for anyone to engage in sexual conduct with another through force or threat of force. We note that the eight counts of rape stem from the following sexual encounters: fellatio; vaginal intercourse; two separate acts of cunnilingus; appellant sticking his fingers in Julie's vagina and anus; and appellant forcing a bottle and flashlight into Julie's vagina.
Force and threat of force "can be inferred from the circumstances surrounding sexual conduct." State v. Schaim
(1992), 65 Ohio St.3d 51, paragraph one of the syllabus. The forcible element of rape and gross sexual imposition is established where a defendant's actions create "the belief that physical force will be used if the victim does not submit" to the defendant's actions. Id. Similarly, the forcible element of rape and gross sexual imposition is established through a showing that the victim's will was overcome by fear or duress brought about by the defendant. State v. Fowler (1985), 27 Ohio App.3d 149, 154; see, also, State v. Martin (1946), 77 Ohio App. 553, 554
(concluding that "where a woman is affected by terror or is in fear of great bodily injury and harm, brought into being by an accused, who has placed his victim within his power and control, intercourse under such circumstances without consent is rape * * * when it is shown that her will was overcome by the fear or duress"). Thus, sufficient evidence existed to uphold a rape conviction where a defendant claiming to be a police officer unlawfully restrained a victim of her liberty and subjected her to a series of frightful experiences that finally culminated in sexual conduct. Id.
In this case, as noted above, Julie testified that she was awakened by a strange man, later identified as appellant, in the middle of the night after he broke into her home. She testified that she first saw appellant standing over her bed wearing rubber gloves. Appellant removed the bedcovers from her and pulled up her shirt to perform the various sexual acts. Appellant moved her over in the bed and used his hands to move her body into certain positions as a precursor to the various sexual acts.
As well, according to Julie's testimony, appellant spoke sternly and emphatically throughout the sexual encounter. Julie described appellant's stern and emphatic tone as the equivalent of him brandishing a weapon. He would speak in such tones as he moved her body into different positions before performing various sexual acts upon her.
Additionally, Julie would not attempt to call the police until appellant left her bedroom to go into the kitchen for a beer. She could only whisper into the phone that she was being raped because she did not want appellant to know she was calling the police. Columbus Police Officer Mathew Smith verified the call by testifying that a dispatcher told him that she thought a woman calling from 87 North Broadleigh whispered, "[h]elp, I'm being raped." When appellant came back into the bedroom he saw Julie with the phone in her hand and asked her who she was calling. When Julie said that she was calling her sister, appellant ordered her not to call.
Julie testified that, because of the fear created during the situation, she did not physically resist or fight appellant. She explained:
 * * * [I]f you wake up and a strange man is standing over you, that person is in total control. I mean, you are just — you have no control, and my instinct was to do whatever it is that he wanted me to do to lessen any pain or torture that I might have to go through. But I think as the events were occurring, it may have — as I reacted to what he was doing and was doing whatever he wanted me to do, that seemed to not bring about any violence or anger from him. So I just kept in that mode and believed that I was probably sparing myself some torture and pain.
Under the above circumstances, it would be reasonable for a jury to conclude that appellant used force and threat of force by bringing about a feeling of fear and terror on Julie and placing her within his power and control such that her will was overcome throughout the sexual encounter. The testimony concerning Julie's failure to physically resist or fight appellant does not lead us to conclude otherwise. A victim need not prove physical resistance to the offender in prosecutions for rape or gross sexual imposition. R.C. 2907.02(C); R.C. 2907.05(C). Rather, such testimony highlights the frightful experiences and threat of force present during the sexual encounter.
Because we find the necessary element of force to exist in this case, we conclude that sufficient evidence exists to support appellant's convictions of rape and gross sexual imposition.
Appellant was also convicted of one count of kidnapping in violation of R.C. 2905.01, which makes it unlawful for anyone to restrain another to commit a felony. The above testimony and evidence concerning the force and threat of force supports a finding that appellant controlled the situation and restrained Julie in order to commit the rape and gross sexual imposition. Thus, we conclude that sufficient evidence supports appellant's conviction of kidnapping.
Having concluded that sufficient evidence exists for appellant's rape, gross sexual imposition and kidnapping convictions, we further conclude that there is sufficient evidence to support appellant's conviction for aggravated burglary in violation of R.C. 2911.11, which, in pertinent part, states that it is unlawful for a person to both trespass into a person's dwelling by force, stealth or deception for the purpose of committing a criminal offense and to either actually inflict or attempt to or threaten to inflict physical harm on another while committing the criminal offense.
In this case, as noted above, Officer Smith testified that, when he arrived at the house, he noticed that a screen door leading into a screened-in porch was propped open. The officer noticed that a door leading into the house was also open. Officer Eickholt testified that the outer screen door to the porch had been propped open by "the little metal [piece] that you have to slide" in order to keep such screen doors open. Officer Eickholt further testified that the screen door to the residence was propped open in the same manner, and "the inside door to the house was also open." However, according to Julie, the doors leading into the porch were closed when she went to bed on the evening of January 3. Similarly, Julie testified that the main door and the storm door leading from the porch into the kitchen were locked when she went to bed that evening. The record shows that Julie was home alone from the time she went to bed and from the time she saw appellant standing in her bedroom. Accordingly, the record supports a finding that neither Julie nor her sister invited appellant into their home, and that appellant trespassed into the home by force and stealth.
As well, we conclude that a jury could infer from appellant's conduct during the sexual encounter that appellant trespassed into Julie's home to commit a criminal offense and that he inflicted physical harm on the victim. Accordingly, we conclude that sufficient evidence exists to support appellant's conviction of aggravated burglary.
Appellant also claims in his second assignment of error that his convictions are against the manifest weight of the evidence. Again, we disagree.
In reviewing whether a verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror." Thompkins, at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences and consider the credibility of witnesses. Id. Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175; see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545,547-548. Reversing a conviction as being against the manifest weight of the evidence is one reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, at 387.
In this case, appellant refutes the above testimony and evidence and claims that Julie invited him into her home and that the sexual encounter was consensual. However, a conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony. State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236, unreported. Credibility determinations on conflicting testimony are issues primarily reserved to the trier of fact to be second-guessed only in the most exceptional case. In re: Jerome Fisher (June 25, 1998), Franklin App. No. 97APF10-1356, unreported. Despite appellant's contentions, we cannot say that the jury clearly lost its way in convicting appellant. Nothing in the record suggests that the evidence supporting appellant's convictions are not credible and should not be given consideration.
In so concluding, we note that appellant's testimony lacks credibility. For example, appellant testified that the sexual encounter did not include vaginal intercourse. However, Columbus Police Criminalist Sylvia Acton testified that she found the presence of semen on a swab taken from Julie's vagina after the sexual encounter. Moreover, we recognize that appellant's account does not explain how or why the side doors leading into Julie's kitchen were open. According to appellant, he and Julie entered through the front door leading into the living room. However, given the open side doors, a jury could properly infer that appellant gained entry illegally through those side doors, rather than being invited in through the front door. Furthermore, we are unable to reconcile why appellant would wear rubber gloves during a consensual sexual encounter. A jury could reasonably infer that appellant was wearing rubber gloves to avoid leaving fingerprints at the scene. As well, we find that a jury could reasonably infer that appellant's removing the rubber gloves upon being stopped by the police was a furtive effort reflective of a consciousness of guilt. Thus, we conclude that the greater amount of credible evidence supports appellant's convictions and that his convictions are not against the manifest weight of the evidence.
Accordingly, based on the reasons noted above, we overrule appellant's second assignment of error.
We next discuss appellant's first assignment of error, which challenges certain questions posed to him during cross-examination regarding his use of Prozac, as well as testimony by Dr. John Drstvensek, Detective Junk, and Julie and Keri Adams.
Initially, appellant contends that the above questions and testimony were erroneously brought into evidence because they were introduced for the sole purpose of "bolstering" Julie's testimony; however, we conclude that appellant's challenges to the above questions and testimony do not succeed solely on the basis that the testimony bolsters Julie's testimony. A party may introduce testimony to "bolster" or corroborate another witness's testimony as long as the testimony is relevant and not objectionable on specific evidentiary grounds. See, e.g., Statev. Stowers (1998), 81 Ohio St.3d 260, 263 (indicating that a witness is not prohibited from giving testimony that provides additional support for the truth of the facts testified to by another witness).
Specifically, in his first assignment of error, appellant challenges testimony by expert witness, Dr. Drstvensek relating to whether a rape victim typically physically resists the offender. First, we examine whether the trial court erred in qualifying Dr. Drstvensek as an expert witness. Over appellant's objection, the trial court concluded that Dr. Drstvensek was qualified as an expert to testify in regards to "the physical effects on a body by an alleged rape victim." In so concluding, the trial court noted that appellant's "objection will be overruled to this witness being called."
We are to apply an abuse of discretion standard when reviewing a trial court's decision regarding an expert witness's testimony.Kumho Tire Co., Ltd. v. Carmichael (1999), 119 S.Ct. 1167,1176; General Electric Co. v. Joiner (1997), 522 U.S. 136;State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. The term "abuse of discretion" connotes more than an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. An abuse of discretion exists where the trial court's decision is unreasonable, arbitrary or unconscionable.Id.
A witness may testify as an expert if the testimony relates to matters beyond the knowledge or experience possessed by lay persons. Evid.R. 702(A). Additionally, an expert witness must possess specialized knowledge, skill, experience, training or education regarding the subject matter of the expert testimony. Evid.R. 702(B). The expert's testimony must be based on reliable, scientific, technical or other specialized information. Evid.R. 702(C).
In this case, we conclude that the trial court did not abuse its discretion when it simply qualified Dr. Drstvensek as an expert witness, under Evid.R. 702, to testify on the physical effects of a rape on the body of a rape victim. During voir dire examination, Dr. Drstvensek testified that he graduated from medical school in 1976 and has become board certified in emergency medicine. He indicated that he was serving as the chairman and medical director of the emergency departments of two local hospitals. As well, Dr. Drstvensek testified that he has been practicing emergency medicine full time since 1977, which includes experience examining sexual assault victims. Thus, the trial court properly concluded that Dr. Drstvensek gained specialized knowledge through his training and professional experience on the subject of the physical manifestations of a rape on a rape victim, and that his testimony would be based on reliable information. Additionally, the trial court properly concluded that Dr. Drstvensek's testimony on the physical effects of a rape on a rape victim concerns issues beyond the knowledge and experience possessed by lay persons.
Upon being qualified as an expert witness, the following testimony occurred during direct examination:
 Q. DOCTOR, AMONG THE WOMEN WHO YOU HAVE EXAMINED AS VICTIMS OVER THE YEARS, HAVE THERE BEEN SOME WHO HAVE NOT CRIED OUT, HAVE NOT SHOUTED, NOT, AGAIN, I GUESS, RESISTED?
A. YES, I HAVE SEEN MANY OF THOSE CASES.
 Q. AND HOW MANY — I DON'T KNOW IF YOU CAN GIVE A PERCENTAGE, BUT IF YOU CAN ESTIMATE, HOW MANY OF THOSE WOULD THERE BE VERSUS THE OTHER EXTREME VICTIMS WHO HAVE, LET'S SAY, RESISTED OR CRIED OUT?
 A. THE VAST MAJORITY, I WILL SAY WELL OVER 80 PERCENT, HAVE BEEN PASSIVE AND HAVE NOT FOUGHT BACK.
While Dr. Drstvensek was qualified as an expert witness, the foregoing questions were beyond the scope of that expertise. Moreover, the trial court could properly conclude either that the above testimony is not relevant because it does not lead toward proving any of the crimes to which appellant was convicted, or that any probative value of such testimony is substantially outweighed by its danger of unfair prejudice. See Evid. R. 401; Evid. R. 403(A). Nonetheless, appellant made no objection to the above testimony during trial. Appellant's objection to the doctor's status as an expert witness did not relieve him from his obligation to make other objections on other grounds, such as foundation, relevancy or unfair prejudice, to the specific questions and responses occurring during Dr. Drstvensek's direct and re-direct examination. See Craft v. Collins (Nov. 22, 1995), Scioto App. No. 94 CA 2251, unreported (holding that, where an appellant only objected to the witnesses being qualified as experts, no error was preserved for appeal on the issue of whether the trial court improperly admitted expert testimony that was not expressed in terms of probability).
Generally, a failure to object at trial is deemed a waiver of the alleged error on appeal. State v. Moreland (1990), 50 Ohio St.3d 58,62. However, plain errors or defects affecting substantial rights may be noticed, although they were not brought to the attention of the trial court. Crim.R. 52(B). We cannot find plain error unless we find that, but for the error, the outcome of the trial would clearly have been different. Moreland,
at 62, citing State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus; see, also, State v. Hill (1995), 73 Ohio St.3d 433,438. The plain error rule is to be invoked only in exceptional circumstances to avoid a clear miscarriage of justice.Long, at paragraph three of the syllabus. In this case, the record does not support a finding that appellant clearly would have been acquitted of these charges but for the claimed error. Nothing in the record suggests that the jury was tainted by hearing the above testimony. Additionally, as noted above, the jury heard extensive, credible evidence in support of appellant's convictions. Specifically, regarding the rape charges, the jury heard extensive, credible evidence proving that the sexual encounter was non-consensual. Moreover, appellant's version of the events was not credible. Thus, we conclude that the above testimony from Dr. Drstvensek does not rise to the level of plain error.
As well, in his first assignment of error, appellant challenges questions posed to him regarding his use of Prozac. While cross-examining appellant, appellee asked him about his use of Prozac and, specifically, whether he was on Prozac when he met Julie. Appellant argues that we should conclude that the "Prozac" questioning denied him a fair trial. We disagree.
Appellant made no objection at trial to the limited "Prozac" questioning. As we indicated above, under the plain error doctrine, we may notice errors not brought to the attention of the trial court only if we find that, but for the claimed error, the outcome of the trial would clearly have been different.Moreland, at 62; Hill, at 438. In this case, in light of the evidence supporting appellant's convictions and the limited nature of the "Prozac" questioning, we cannot say that appellant clearly would have been acquitted of the charges but for the claimed error. Therefore, we conclude that appellant waived any error relating to the limited "Prozac" questioning.
Appellant's first assignment of error also challenges particular testimony by Detective Junk. Detective Junk testified about his involvement as an investigator in this case. While Detective Junk was testifying, appellee elicited the following testimony:
 Q. CAN YOU GIVE AN APPROXIMATION OR AN ESTIMATION AS TO, AMONG THE CASES YOU HAVE BEEN INVOLVED IN, HOW MANY OF THEM WOULD HAVE INVOLVED A VICTIM WHO HAS RESISTED AND FOUGHT BACK AGAINST THEIR ATTACKER VERSUS THOSE WHERE A VICTIM HAS NOT FOUGHT BACK AND HAS COMPLIED WITHOUT ANY RESISTANCE TO THE DEMANDS OF THE ATTACKER?
[APPELLANT]: OBJECTION.
THE COURT: OVERRULED. YOU MAY ANSWER THE QUESTION.
 THE WITNESS: PROBABLY LESS THAN TEN PERCENT IS THERE PHYSICAL RESISTANCE.
 Q. (BY [APPELLEE]) I GUESS THE OTHER SIDE OF THE QUESTION WOULD BE THEN IF THERE'S — OF YOUR ANSWER WOULD BE ROUGHLY, AND I REALIZE THIS IS AN ESTIMATE, 90 PERCENT WOULD NOT BE RESISTANT?
A. THAT IS CORRECT. [Tr. 564-565.]
Appellant argues that the trial court erred in overruling his objection to the above testimony by Detective Junk. We agree.
Initially, we recognize that appellee claims the above testimony by Detective Junk qualifies as expert testimony because it helps to dispel misconceptions that rape victims always physically resist and fight their attackers. See Evid.R. 702(A) (establishing that a witness may provide expert testimony if it relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons). However, there is nothing in the record indicating that Detective Junk was qualified or tendered as an expert witness.
Notwithstanding, we conclude that the above testimony is not admissible as expert testimony because the testimony fails to satisfy the requirements under Evid.R. 702. As noted above, an expert witness must possess specialized knowledge, skill, experience, training or education regarding the subject matter of the expert testimony. Evid.R. 702(B). As well, the testimony must be based on reliable information. Evid.R. 702(C). Relevant evidence based on valid principles will satisfy the threshold reliability standard for the admission of expert testimony under Evid. R. 702. State v. Nemeth (1998), 82 Ohio St.3d 202, 210. The United States Supreme Court indicated that an expert witness's knowledge must not be based on a subjective belief or unsupported speculation. Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993),509 U.S. 579, 590. Rather, the knowledge must apply to a "body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds." Id.
In this case, Detective Junk testified about the way women behave when being sexually assaulted; however, his opinion is based solely on conclusions he drew from random observations and investigations of cases with which he was involved. The information behind Detective Junk's testimony is too unreliable and lacks scientific foundation. Therefore, Detective Junk's testimony lacks the requisite reliability and, thus, is not admissible as expert testimony.
Additionally, appellee asserts that the above testimony by Detective Junk would be admissible at trial even if not qualified as expert testimony. We disagree. The above testimony does not come in otherwise because Detective Junk's conclusions regarding other investigated rape cases are irrelevant toward proving any of the required elements in appellant's case.
Additionally, in his first assignment of error, appellant challenges the admissibility of particular testimony by Julie and Keri Adams concerning the behavioral changes that Julie experienced after the alleged rape. Appellant asserts that Julie's behavioral changes are not relevant without an expert assessing whether Julie experienced such behavioral changes as a result of the alleged rape. We agree.
We recognize that an alleged rape victim's post-shock reactions may corroborate the victim's testimony that he or she was, in fact, raped. State v. Whitman (1984), 16 Ohio App.3d 246,247. Post-shock reactions to rape may manifest themselves in lesser degrees when observed by a lay person. Whitman, at 247. Indeed, the Ohio Supreme Court has indicated that assessments on whether an individual is experiencing post-shock reactions from a stressful situation, such as a sexual assault, is information beyond the common knowledge and experience of a jury. State v.Bidinost (1994), 71 Ohio St.3d 449, 454. Accordingly, we acknowledge that expert testimony is necessary to properly assess whether an individual is experiencing post-shock reactions and other related behavioral changes because he or she was raped. SeeBidinost, at 454; Whitman, at 247.
In this case, appellee did not provide any expert testimony to interpret Julie's behavioral changes. An expert's testimony was required to establish that Julie was experiencing trauma and post-shock reactions due to her being raped. Accordingly, the testimony by Julie and Keri Adams, alone, has no probative value to the issue of whether Julie was raped and, thus, is irrelevant and inadmissible.
Having concluded that the trial court erred in admitting the above testimony by Detective Junk and Julie and Keri Adams, we must determine whether the trial court's errors warrant a reversal of appellant's convictions.
In criminal cases, errors are categorized as constitutional error and non-constitutional error. State v. Davis
(1975), 44 Ohio App.2d 335, 346. The non-constitutional standard applies when errors in a criminal trial do not relate to a violation of the accused's federal or state constitutional rights.Id. A non-constitutional error in the trial of a criminal case is harmless if there is other substantial non-disputed evidence to support a guilty verdict. Id. at 347. If there is not other substantial evidence to support the guilty verdict, then the error is prejudicial and the accused's conviction must be reversed. Id.
A federal or state constitutional error in the trial of a criminal case is harmless if the reviewing court concludes that beyond a reasonable doubt the error did not contribute to the accused's conviction. Id. at 346, citing Harrington v. California
(1969), 395 U.S. 250, and Chapman v. California (1967),386 U.S. 18. If other evidence against the accused is overwhelming, the reviewing court could conclude beyond a reasonable doubt that the error was harmless and did not contribute to the accused's conviction. Davis, at 348; Sage, 181, quoting State v. Williams
(1983), 6 Ohio St.3d 281, 290.
Many courts apply the more rigorous Chapman-Harrington
standard regardless of the type of error involved. Davis, at 348. Nonetheless, we conclude that the errors in this case, individually, are not prejudicial under either the constitutional or non-constitutional standard. Appellant's convictions are not entirely based on highly circumstantial and doubtful testimony and evidence. Rather, the convictions are based on eyewitness accounts of what occurred on January 3 and 4 from police officers and Julie. Such accounts created overwhelming evidence supporting appellant's convictions. Thus, we may properly conclude beyond a reasonable doubt that the individual errors in this case did not contribute to the jury's decision to convict appellant and, thus, constitute harmless errors.
In so concluding, we note that the multiple harmless errors in this case had no cumulative effect of depriving appellant of his right to a fair trial. A conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though the individual errors would not warrant reversal. State v. DeMarco
(1987), 31 Ohio St.3d 191, paragraph two of the syllabus. The overwhelming evidence in support of appellant's convictions offset any cumulative effect of the harmless errors in this case. The combined errors did not constitute substantive flaws in the trial and did not permeate throughout the trial.
Accordingly, based on the discussion above, we overrule appellant's first assignment of error.
Appellant's third assignment of error concerns his consent defense. As noted above, appellant asserted at trial that his sexual encounter with Julie was consensual. Appellant asked the trial court to instruct the jury that consent could be expressed or implied; however, the trial court refused appellant's request. Appellant asserts that the trial court erred in refusing the request to instruct the jury that consent could be expressed or implied. We disagree.
Any party may propose jury instructions. Crim.R. 30; State v.Guster (1981), 66 Ohio St.2d 266, 269. If the proposed instruction for the jury is correct, pertinent and timely presented, the trial court must include it, at least in substance, in the general charge. Guster, at 269, citing Cincinnati v.Epperson (1969), 20 Ohio St.2d 59, paragraph one of the syllabus;State v. Rivers (1977), 50 Ohio App.2d 129, 134. However, the trial court is not required to give a proposed jury instruction verbatim; the trial court may use its own language to communicate the same legal principles. State v. Sneed (1992), 63 Ohio St.3d 3,9. A trial court does not err in failing to give a jury instruction proposed by a party where the proposed instruction failed to provide the jury with any substantive information not already before it. State v. McVay (Sept. 30, 1999), Franklin App. No. 98AP-1246, unreported.
In this case, although the trial court did not instruct the jury that consent could be expressed or implied, the trial court gave the following "consent" instruction:
 THE DEFENDANT MAINTAINS HIS INNOCENCE BY CLAIMING THE SEXUAL ENCOUNTER IN THIS CASE WAS CONSENSUAL. SINCE CONSENT NEGATES THE MATERIAL ELEMENT OF FORCE, IF YOU FIND THAT THE STATE HAS FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE SEXUAL ENCOUNTER WAS BY FORCE OR THREAT OF FORCE, YOU MUST FIND THE DEFENDANT NOT GUILTY. [Tr. 710.]
Additionally, the trial court instructed the jury that appellant could be convicted of rape only if it is found beyond a reasonable doubt that he engaged in sexual conduct with Julie through force or threat of force. Furthermore, the trial court instructed the jury that appellant could be convicted of gross sexual imposition only if it is found beyond a reasonable doubt that he engaged in sexual contact with Julie through force and threat of force.
These instructions conveyed to the jury that compulsion is necessary for a conviction of rape and gross sexual imposition. Additionally, the instructions explained that consent negated the force or threat of force element to the rape and gross sexual imposition offenses and, thus, informed the jury that if, there was consent, there could be neither rape nor gross sexual imposition. See State v. Whitfield (Mar. 30, 1984), Lake App. No. 9-283, unreported; State v. Cummings (Apr. 5, 1990), Franklin App. No. 89AP-866, unreported. As such, we conclude that the instructions adequately informed the jury of the "consent defense" and gave the jury sufficient latitude to consider any alleged implied consent. Any language informing the jury that consent could be expressed or implied would not have given the jury any substantive information not already before it. Accordingly, we conclude that the trial court did not err in refusing appellant's request to instruct the jury that consent could be expressed or implied, and overrule appellant's third assignment of error.
Appellant's fourth assignment of error concerns the trial court's decision to sentence him to fifty-five years imprisonment.
Specifically, the trial court sentenced appellant to: four years imprisonment for the aggravated burglary charge; four years imprisonment for the kidnapping charge; four years imprisonment for the gross sexual imposition charge; nine years imprisonment for the rape involving vaginal intercourse; six years imprisonment for the rape involving forced fellatio; six years imprisonment for the rape involving appellant sticking his fingers in Julie's vagina; six years imprisonment for the rape charge involving appellant sticking his fingers in Julie's anus; six years imprisonment for the rape charge involving appellant forcing a flashlight in Julie's vagina; six years imprisonment for the rape charge involving appellant forcing a bottle in Julie's vagina; six years imprisonment for appellant performing one act of cunnilingus on Julie; and six years imprisonment for appellant performing another act of cunnilingus on Julie.
The trial court ordered appellant to serve the sentence for kidnapping and gross sexual imposition concurrently. The trial court ordered appellant to serve the remaining counts consecutively. Appellant contends that the trial court did not articulate the appropriate rationale for imposing consecutive sentences of imprisonment. We agree.
We initially note that appellant makes no claim that the offenses of gross sexual imposition, kidnapping and rape must merge under R.C. 2941.25, which requires offenses to merge if they are offenses of similar import that were not committed separately or with a separate animus as to each. In this case, appellant performed various sexual acts violating different areas of Julie's body. As well, the record shows that appellant took several breaks during the encounter and even left the bedroom a couple of times. Thus, we may properly conclude that the sexual acts in this case did not arise from the same conduct and were committed separately. Therefore, the offenses of gross sexual imposition, kidnapping and rape do not merge in this case under R.C. 2941.25. See State v. Blankenship (1988), 38 Ohio St.3d 116, 117; State v.Mughni (1987), 33 Ohio St.3d 65, 67; State v. Talley (1985),18 Ohio St.3d 152, 153-154; Whitfield. As such, appellant's sentence for the multiple offenses is valid unless the trial court erred in imposing consecutive sentences of imprisonment.
A trial court is required to make a finding that gives its reasons for imposing consecutive sentences. R.C.2929.19(B)(2)(c). For a meaningful review, the record must contain an indication, by use of specific operative facts and findings, that the trial court considered the statutory factors in its determination. See State v. Edmonson (1999), 86 Ohio St.3d 324,328; State v. Kase (Sept. 25, 1998), Lake App. No. 97-A-0083, unreported. We have the authority to remand a case for resentencing if we conclude that the trial court failed to make the requisite findings and explanations. See Edmonson, at 329 (remanding case for resentencing where the trial court imposed a sentence without specifying any of the requisite findings and reasons in the sentencing statute); State v. Morefield (Dec. 21, 1999), Franklin App. No. 99AP-229, unreported.
In this case, the trial court indicated the following before imposing consecutive sentences of imprisonment on appellant:
 THE COURT NEEDS TO JUSTIFY CONSECUTIVE SENTENCES * * * THE COURT BELIEVES THAT BASED ON [JULIE] ADAMS' TESTIMONY ABOUT THE TERROR SHE UNDERWENT AND FOR OTHER REASONS STATED BY THIS COURT IN THE SENTENCING HEARING, THAT CONSECUTIVE SENTENCES ARE REQUIRED AND ALLOWED UNDER THE LAW.
While the trial court came close to providing the requisite findings and reasons, Edmonson makes it clear that the trial court is to provide specific findings and reasons before imposing consecutive sentences on a defendant. See Edmonson, at 329. Edmonson dictates that, in order to lawfully impose consecutive sentences on appellant, the record must reflect that the trial court imposed such a sentence based on appellant satisfying the criteria listed in the sentencing statute regarding consecutive sentences. Id. As such, we sustain appellant's fourth assignment of error.
In summary, appellant's first, second and third assignments of error are overruled and his fourth assignment of error is sustained. As such, the judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded to the trial court for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
BRYANT, J., and BOWMAN, P.J., concur.