[Cite as *State v. Timm*, 2022-Ohio-3010.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| GARY TIMM, JR. | : | Case No. 21 CAA 11 0060 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:               Appeal from the Court of Common
                                                            Pleas, Case No. 20 CR I 110738


JUDGMENT:                                            Affirmed


DATE OF JUDGMENT:                            August 30, 2022


APPEARANCES:

For Plaintiff-Appellee                              For Defendant-Appellant

MELISSA A. SCHIFFEL                          FELICE HARRIS
CORY J. GOE                                          1465 E. Broad Street
145 N. Union Street                                Columbus, OH  43205
3rd Floor
Delaware, OH  43015

*Wise, Earle, P.J.*

{¶ 1}   Defendant-Appellant Gary Timm, Jr. appeals his October 2021 judgment of conviction and sentence for one count of rape and one count of gross sexual imposition. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   In early 2019, A.R. was 15 years old. She lived with her grandfather, R.R., her uncle, B.R., her older sister L.R., and L.R.'s boyfriend, appellant herein.

{¶ 3}   In February 2019, L.R. gave birth to her and appellant's son. Shortly thereafter, L.R., appellant, and the infant moved to their own apartment a short drive away from R.R. At that point, A.R. had a good relationship with appellant. She considered him a friend and had no reason to dislike or fear him.

{¶ 4}   On a date somewhere between March and May of 2019, A.R. went home from school sick. Her uncle, B.R. picked her up, took her home, and then left for work. Thereafter, appellant arrived at A.R.'s home to either drop off or pick up a car jack. While there, appellant spoke with A.R. about being bullied at school, gave her some advice, and then left.

{¶ 5}   Appellant returned a short time later to do laundry, something that was not typical as L.R. usually handled that task or she and appellant did it together. L.R. was supposed to do the laundry that day, but appellant volunteered. L.R. found this odd. Before appellant left, L.R asked who was home at R.R.'s and appellant said A.R. was home.

{¶ 6}   Once appellant arrived, he asked A.R. to accompany him to the basement to start the laundry. Once in the basement, appellant told A.R. she looked tense and

asked if she wanted a massage. A.R. said "I don't know" to which appellant responded "Ya. I'll give you a massage." Appellant then directed A.R to lay on her stomach over a barstool. Feeling uncertain, A.R. sat on the barstool. Appellant corrected her, telling her "no, on your stomach." A.R. complied. Once A.R. was lying over the stool, appellant did rub A.R.'s back, but then pulled her leggings and underwear down and digitally penetrated her vagina. Taken by surprise, A.R. felt paralyzed with fear and unable to voice her objection. Appellant then asked A.R. if she wanted "it" inside her, apparently referring to his penis. A.R. found her voice, and said "No, I'm okay. I just want to go upstairs."

{¶ 7}   A.R. fixed her clothing and she and appellant went upstairs to the kitchen where A.R. sat on the counter. Appellant asked A.R. "You're not going to tell anybody, right?" A.R. stated she would not. Appellant then said "Okay. Give me a hug" and A.R. complied.

{¶ 8}   About that time, L.R. made a Facetime call to appellant because he had been gone longer than necessary for their usual routine of simply switching over laundry loads and returning home in between instead of staying while the loads cycled. Asked what was taking so long appellant said he was waiting for clothes to dry. L.R. asked where A.R. was and appellant turned his phone to show A.R. sitting on the counter top. L.R. thought something seemed odd about A.R. during the call, but dismissed the thought.

{¶ 9}   Sometime after that incident, appellant and L.R. were together at A.R.'s house doing laundry. Appellant was helping A.R. take hair dye out of her hair using peroxide, while L.R. was in and out of the room handing the laundry. A.R. had asked L.R to help her with her hair, but appellant offered to do it.  A.R. was seated in front of the laundry room sink as appellant applied the peroxide. While performing the task, appellant

would tap A.R.'s elbows to get her to stand up, and then rub his crotch against A.R.'s buttocks. She would sit down and he would do the same thing again. Both were clothed, but A.R. believed appellant had an erection. A.R. once again felt too frozen with fear to respond and felt there was nothing she could do to make the assault stop.

{¶ 10} A.R. did not tell anyone about either incident for a while. She eventually told three friends who encouraged her to tell her grandfather, R.R. R.R. had noticed a change in A.R. leading up to her disclosure both emotionally and physically as A.R. had lost a lot of weight. R.R. left it up to A.R. to decide what she wanted to do next and initially A.R. decided to do nothing. But later, A.R. told her pediatrician who advised her to contact police.

{¶ 11} At the direction of Delaware City Police Department Detective Daniel Madden, R.R. took A.R. to Nationwide Children's Hospital Children's Advocacy Center (CAC) for a video recorded forensic interview and physical exam. A.R. disclosed the above outlined incidences to the interviewer. She further discussed the emotional impact of the events and the fact that her sister told her that after she and appellant fight he also asks her if she's going to tell anyone and then asks for a hug. Finally, A.R. underwent a genital examination which was normal.

{¶ 12} Detective Madden spoke to appellant who denied the allegations. He did acknowledge going to A.R.'s house to do laundry and initially stated he was there for a couple minutes; just long enough to switch over loads. He later stated he was there for 15 minutes, had advised A.R. to "keep her head up," and recalled the Facetime call from L.R. He also confirmed that he helped A.R. with her hair, but stated L.R. was in the basement with them the entire time.

{¶ 13} When A.R. told her sister L.R. what happened, L.R. was angry and did not want to believe A.R. She confronted appellant who denied anything ever happened between he and A.R. Sometime later, however, L.R. changed her mind. During an argument with appellant he told L.R. "that's why your sister came on to me." Further, the fact that A.R. said appellant asked if she was going to tell anyone and then asked for a hug was familiar to L.R. because appellant did the same thing with her when they argued.

{¶ 14} As a result of these events, on November 16, 2020, the Delaware County Grand Jury returned an indictment charging appellant with one count of rape in violation of R.C. 2907.02(A)(2), and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1). Appellant pled not guilty to the charges and opted to proceed to a jury trial which began on October 5, 2021 and concluded on October 7, 2021.

{¶ 15} At trial, the state presented the above outlined evidence including the video of A.R.'s forensic interview which was redacted as agreed upon by the state and counsel for appellant.

{¶ 16} Appellant testified on his own behalf. As to the first incident, he initially stated he never borrowed a car jack, but later in his testimony stated he did. He testified it was not unusual for him to stop by and do laundry and that nothing happened between he and A.R. that day. He stated their interaction was limited to him seeing her on the sofa crying and him telling her to keep her head up before he left. He stated neither the Facetime call nor the hug after allegedly asking A.R. not to tell ever happened.

{¶ 17} As for the second incident. Appellant confirmed he helped A.R. with her hair, but stated L.R. was in the basement with them the entire time and therefore nothing untoward happened between he and A.R.

{¶ 18} Appellant first testified A.R. was lying about these incidents, but he did not know why. He later testified A.R. was lying to keep him away from his son so he would go to prison and L.R. would get sole custody of their son.

{¶ 19} After receiving the evidence and deliberating, the jury found appellant guilty as charged. At a later sentencing hearing, appellant was sentenced to an indefinite prison term of 6 to 9 years for rape, and a definite term of 12 months for gross sexual imposition. Appellant was ordered to serve the sentences consecutively. Appellant was further classified as a Tier III sex offender.

{¶ 20} Appellant timely filed an appeal and the matter is now before this court for consideration. He raises six assignments of error for our consideration as follow:

I

{¶ 21} "GARY TIMM WAS DENIED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY ON THE DEFINITION OF FORCE."

II

{¶ 22} "THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION FOR RAPE IN VIOLATION OF MR. TIMM'S RIGHT TO DUE PROCESS OF LAW GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

III

{¶ 23} "GARY TIMM'S CONVICTION FOR GROSS SEXUAL IMPOSITION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶ 24} "THE TRIAL COURT ERRED AND VIOLATED MR. TIMM'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL BY IMPROPERLY ADMITTING EVIDENCE IN VIOLATION OF OHIO EVID. R. 403 AND 404.

V

{¶ 25} "GARY TIMM, JR. WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

VI

{¶ 26} "GARY TIMM, JR. WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL AS A RESULT OF THE CUMULATIVE ERRORS AT TRIAL."

I

{¶ 27} In his first assignment of error, appellant argues the trial court improperly instructed the jury on the element of force for rape. We disagree.

{¶ 28} An appellate court reviews a trial court's decision to give a particular set of jury instructions under an abuse of discretion standard. *State v. Martens*, 90 Ohio App.3d 338, 343, 629 N.E.2d 462 (3d Dist.1993). If, however, the jury instructions incorrectly state the law, then an appellate court will conduct a de novo review to determine whether the incorrect jury instruction misled the jury in a matter materially affecting the complaining party's substantial rights. *State v. Kovacic*, 11th Dist. Lake No. 2010-L-018, 2010-Ohio-5663 ¶ 17. Furthermore, an appellate court must review jury instructions in the context of the entire charge. *State v. Hardy*, 28 Ohio St.2d 89, 92, 276 N.E.2d 247 (1971)

{¶ 29} In this matter, a lengthy conversation took place between the trial court and counsel regarding how the jury should be instructed on the element of force:

THE COURT: Your jury instruction. What instruction is it that you want me to include?

[COUNSEL FOR APPELLANT]: Well, it seems like there's going to be significant development of how the law characterizes force, use of force, case law and interpretation of that. I would point to * * *Schaim * * *, 65 Ohio St.3d 51. That's an Ohio Supreme Court case where the Court notes a defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person or creates the belief that physical force will be used if the victim does not submit.

I would ask the court to consider including that as a – to expound or explain the use of standard use of force that's illustrated in OJI. I think there's probably going to be significant discussion over the definitions of force, use of forces, threat if force, probably leading the jury to have some questions about it as well. I think that would be very informative, of course, is a Ohio Supreme Court opinion.

* * *

[COUNSEL FOR THE STATE]: And if that's the case, Your Honor, I would also ask the Court to put in the language that says the removal of clothing by a person also constitutes force. * * * I think that would

also be appropriate given the testimony that we've heard thus far and specifically from the victim.

[COUNSEL FOR APPELLANT]: I guess I would ask for the specific case law on that. I think that's -- I think that a little less precise, to suggest that it's conclusive that it constitutes force. I'm not sure that's legally accurate.

THE COURT: I actually wrote down a whole bunch because when I heard that language, I assumed that was going to be an issue on Rule 29. So I'm going to give you a whole bunch here. State versus Artis 2021-Ohio-2965; State versus Burton, 2007-Ohio-1660. I think I actually came up with Eskridge as well, even though ultimately Eskridge was based on familial relationship, parent-child relationship. I think there was removal of clothing there that would have sufficed. State verses Whitt, 2003-Ohio-5934. Those are the three that I wrote.

So I have given an instruction that the removal of clothing for the purpose of - - without consent for the purpose of conducting the sexual - - for facilitating the sexual conduct itself is sufficient force. And I guess if you want to look at those over lunch, we can talk about them after lunch. I don't really have any problem.

I note this case - - and I've looked at this case. I think it's called Shaim, * * *. It's now 40 - - almost 30 years old. So I'm not sure exactly whether the law has developed and whether the Supreme

Court has come up with anything since then, but I'll certainly look at that. And do you have a thought on his request?

[COUNSEL FOR THE STATE]: I'd like to go back and look at the case, the specific language that is being requested.

THE COURT: So why don't you look at that case. You can look at the cases I've noted, and we'll come back and talk about it this afternoon.

* * *

[COUNSEL FOR APPELLANT]: I'm sorry, Your Honor. Can you give me a quick rundown of those cases?

The Court: Sure. Hold on.

[COUNSEL FOR APPELLANT]: Is the principal that the removal of clothes is force and is necessarily force or - -

[COUNSEL FOR THE STATE]: Without consent.

THE COURT: Obviously removal of clothes with consent is not force. Removal of clothes without consent separate from the actual sexual act itself as long as it's done for facilitating the sexual conduct, then it is sufficient force to meet the element of force in a rape or gross sexual imposition under (A) - - I guess what is it - - (A)(2) of rape and (A)(1) of the GSI.

The most recent one * * * it's a Sixth District case, but it's from this year. It's that Artis case that I gave. They cite a number of cases in there.

And I believe there's Fifth District case law, but I - - I know there's law around the state on that issue. I don't know if there's any Supreme Court case law. But I've given that instruction at least two or three times in cases like this. That is usually an issue So - -

[COUNSEL FOR APPELLANT]: So that's State versus Artis?

THE COURT: Artis, A-R-T-I-S 2021-Ohio-2965. * * *

[COUNSEL FOR APPELLANT]: Is this a can but are not required to find that the removal is sufficient, or is it the position that that's a required finding?

THE COURT: Well, nothing is a required - - I guess it's all - - at the end of the day it's all up to the jury. Force is defined as any violence, compulsion or constraint physically exerted by any means upon or against a person or thing, cited Revised Code 2901.01(A)(1).

The law is clear any amount of physical force or threat of force however slight is sufficient to support a rape conviction under Revised Code 2907.02(A)(2). State versus Heiney * * *, 2018-Ohio-3408. That's a Sixth District case. * * *.

[COUNSEL FOR APPELLANT]: I guess the reason I ask Your Honor is: *The defense agreed based on the case law that the removal of clothing can constitute force, but it's not necessarily force. In other words, if the jury is given that instruction, I have no problem with it.*

THE COURT: Artis' removal of D.B.'s pants is sufficient evidence of force, State versus Robertson, 2017-Ohio-4339, paragraph 67. The

manipulation of a sleeping victim's body or clothing to facilitate sexual conduct is sufficient evidence of force, State versus Burton. Manipulation of a sleeping victim's clothing facilitates sexual conduct with sufficient force to support a conviction under 2907.02(A)(2). So I don't think its limited to a sleeping victim. I think removal of any clothing. I don't think it has to be a sleeping victim. I don't know why it would matter. But that's the law as I understand it, is that if you are moving or removing clothes without consent for the purpose of facilitating sexual conduct, that's sufficient force. So you can look at that and tell me if you disagree.

[COUNSEL FOR APPELLANT]: *I don't disagree.* But I think where it gets muddy is that the jury has the option to find that, but then the jury also has the option to find that's not a mechanism of being purposely compelled. So it gets a little cloudy. *But if the jury is instructed, yes, you can find removal of clothing is sufficient force, I've never disagreed with that.* But you're not required to find that because clothing is alleged to have been removed, you know, even if you find - -

THE COURT: I'm not sure how that's different than any other piece of evidence at the end of the day. I mean, * * * it's up to the jury to conclude whether they think that's sufficient force to * * *. At the end of the day, everything is up to them.

* * *

[COUNSEL FOR APPELLANT]: If the Court's inclination is to say you may find force if you find that clothes were removed, I have no objection to that, particularly if the Court is also willing to include what I asked for because I know I would ask the jury "You have to reconcile those two things" and make sure that proposed force includes everything else.

[COUNSEL FOR THE STATE]: Your Honor, it should be as simple as legally defined if there's removal of clothes that constitutes enough force. * * * There's no balancing test which is what it sounds like he's asking for. It's a simple point of law that the removal of clothing * * * non-consensually to help facilitate a sexual offense can constitute force, and it's up the jury to decide.

* * *

{¶ 30} Transcript of trial (T.) 310-322, emphasis added.

{¶ 31} Trial counsel for appellant ultimately requested the trial court either issue the standard Ohio Jury Instruction force instruction or include both the defendants and the state's requested instruction. T. 322. The trial court did the latter and provided the parties with the draft jury instruction to review. T. 442. The instruction read:

Force means any violence, compulsion or constraint physically exerted by any means upon or against a person or thing. A defendant purposely compels another to submit to sexual conduct or sexual contact by force or threat of force if the defendant uses physical force

against that person or creates the belief that physical force will be
used if the victim does not submit.

Moving, removing or repositioning the clothing of another without
their consent for the purpose of engaging in sexual conduct or sexual
contact may constitute force. Threat includes a direct and indirect
threat.

{¶ 32} Counsel for appellant indicated he was satisfied with the instruction. T. 447.

{¶ 33} We do not reach the issue of whether or not the instruction was proper. Based on the foregoing, we find any error was invited. Under the invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced." *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 775 N.E.2d 517, 2002-Ohio-4849; *State v. Smith*, 148 Ohio App.3d 274, 772 N.E.2d 1225, 2002-Ohio-3114, at ¶ 30. The doctrine precludes a defendant from making "an affirmative and apparent strategic decision at trial" and then complaining on appeal that the result of that decision constitutes reversible error. *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775 at ¶ 7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir.2003). Moreover, because appellant invited the error by requesting the instruction, he cannot now argue plain error. *State v. Rohrbaugh*, 126 Ohio St.3d 3286, 2010-Ohio-3286, 934 N.E.2d 920, ¶ 10.

{¶ 34} While appellant argues here on appeal that moving or removing clothes without consent for the purpose of facilitating sexual conduct is not a correct or accepted definition of force, as outlined above, during discussions with the trial court, counsel for

appellant agreed that was a correct statement of law. T. 316. In an apparent strategic decision, trial counsel asked the court to provide one of two instructions. The trial court provided one of the instructions requested by trial counsel. Appellant cannot now claim the instruction was erroneous.

{¶ 35} The first assignment of error is overruled.

II, III

{¶ 36} In his second and third assignments of error, appellant argues his conviction for rape is unsupported by sufficient evidence and his conviction for gross sexual imposition is against the manifest weight of the evidence. We disagree.

Applicable Law

{¶ 37} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

### The Convictions

{¶ 38} Appellant was convicted of one count of rape pursuant to R.C. 2907.02(A)(2). That section provides no one shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

{¶ 39} Appellant was further convicted of one count of gross sexual imposition pursuant to R.C. 2907.05(A)(1). That section prohibits sexual contact with another, not the spouse of the offender, when the offender purposely compels the other person to submit by force or threat of force.

### Appellant's Arguments

{¶ 40} Appellant argues the state failed to prove A.R. was compelled to submit to rape by force or threat to force and the jury's finding of force or threat of force regarding gross sexual imposition is against the manifest weight of the evidence.

{¶ 41} Both 2907.02(A)(2) and R.C. 2907.05 (A)(1) require the victim's submission to sexual contact or conduct to be obtained by force or threat of force. The force element needed to prove the offense of gross sexual imposition is the same as it is for rape. *State v. Riggs*, 10th Dist. Franklin Nos. 04AP-1279, 04AP1280, 2005-Ohio-5244 ¶120. In *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988), the Supreme Court of Ohio

found the amount of force required to meet this requirement varies depending on the age of the victim and the relationship between the victim and the defendant. *Id.* at ¶ 58. However, some amount of force must be proven beyond the force inherent in the crime itself. *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763, 766 (1998).

{¶ 42} As discussed in the first assignment of error, appellant agreed to a jury instruction which stated removing the clothing of another without consent for the purpose of engaging in sexual conduct or contact may constitute force. While we will not address whether or not that instruction is correct, we have recently held that placing a hand under clothing without something more does not constitute force. *State v. Moore*, 5th Dist. Morgan No. 21AP0003, 2022-Ohio-2349, ¶ 38.

{¶ 43} Here, A.R. testified to something more. Appellant asked her to go to the basement with him. He then directed A.R. to lie on her stomach over a barstool under the ruse of giving her a backrub. Once appellant had manipulated A.R. into assuming this vulnerable position, he pulled A.R.'s leggings and underwear down and digitally penetrated her vagina. T. 232-235, state's exhibit 1. We find this evidence sufficient to prove force and to support appellant's conviction for rape.

{¶ 44} As to appellant's conviction for gross sexual imposition, A.R. testified that while she was bent over the laundry room sink and appellant was putting peroxide in her hair, appellant tapped her elbows in an "up" motion and then rubbed his crotch against her buttocks. A.R. believed appellant had an erection at the time. A.R. sat down and appellant repeated the same conduct. T. 238-242.

{¶ 45} In arguing the jury lost its way in finding force was established for gross sexual imposition, appellant points to minor inconsistencies between A.R.'s interview at

the CAC and her trial testimony. But the jury viewed the interview and heard A.R.'s testimony. While the jury may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence. *State v. Wolters*, 5th Dist. No. 21CA000008, 2022-Ohio-538, 185 N.E.3d 601, ¶ 20, citing *State v. Craig*, 10th Dist. Franklin App. No. 99AP-739, 2000 WL 297252, (Mar. 23, 2000) *3. Appellant further argues A.R. did nothing to stop the assault, yet a victim is not required to prove physical resistance for an offender to be guilty of gross sexual imposition. R.C. 2907.05(D). We therefore find the jury did not lose its way in convicting appellant of gross sexual imposition.

{¶ 46} The second and third assignments of error are overruled.

IV

{¶ 47} In his fourth assignment of error, appellant argues the state elicited inadmissible victim-impact testimony from A.R. during trial and in the admission of the video of A.R.'s interview at the CAC. He further argues other acts evidence was improperly admitted. We disagree.

403(A) Evidence

{¶ 48} Before trial, appellant filed a motion in limine to exclude portions of the video of A.R.'s interview at the CAC. Appellant argued in part that statements made by A.R. during the interview were irrelevant and hearsay. Here on appeal, however, appellant argues the video as well as portions of A.R.'s testimony were unfairly prejudicial because they were replete with victim impact testimony and should have been excluded pursuant to Evid.R. 403(A).

Applicable Law

{¶ 49} Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 50} In reaching a decision involving admissibility under Evid.R. 403(A), a trial court must engage in a balancing test to ascertain whether the probative value of the offered evidence outweighs its prejudicial effect. *State v. Hymore*, 9 Ohio St.2d 122, 224 N.E.2d 126 (1967), paragraph seven of the syllabus. In order for the evidence to be deemed inadmissible, its probative value must be minimal and its prejudicial effect great. *State v. Morales*, 32 Ohio St.3d 252, 258, 513 N.E.2d 267 (1987). Furthermore, relevant evidence which is challenged as having probative value that is substantially outweighed by its prejudicial effects "should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect" to the party opposing its admission. *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984).

{¶ 51} Testimony regarding the effect a defendant's criminal acts have on the victim is usually irrelevant because it does not ordinarily involve the guilt or innocence of the accused. *State v. Wade*, 8th Dist. No. 90145, 2008-Ohio-4870, 2008 WL 4358375, ¶ 17. "Rather than proving any fact of consequence on the issue of guilt, victim impact testimony tends to inflame the passions of the jury and risk conviction on facts unrelated to actual guilt." *Id.*, citing *State v. White*, 15 Ohio St.2d 146, 239 N.E.2d 65 (1968). However, "[v]ictim-impact evidence is admissible in certain circumstances, such as when the evidence relates to both the facts attendant to the offense and the effect on the victim."

*State v. Rucker*, 2d Dist. No. 24340, 2012-Ohio-4860, 2012 WL 5076193, ¶ 34, citing *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 138.

Video of A.R.'s Interview

{¶ 52} Appellant challenges the admission of several portions of the CAC video of A.R. wherein A.R. describes the anxiety the events have caused her, the process of telling those close to her what happened, the confrontation between herself and her sister when she did disclose the incidents, and her mental health struggles as a result of the incidents. Like the jury instruction addressed in the first assignment of error, however, counsel for appellant agreed as to which portions of the video were ultimately shown to the jury. Conversation between the court and defense counsel regarding what defense counsel wanted redacted from the video centered on statements made by A.R. indicating appellant was "terrifying and creepy." T. 11-13. The state removed the portion of the video defense counsel wanted removed. Counsel for appellant then approved the result and further, lodged no objections when the video was played to the jury. T. 137-138,195-198.

{¶ 53} Because trial counsel agreed to play the portions of the video shown to the jury that he now complains of, we find appellant invited any error in regard to any victim impact testimony contained in the video. *State v. Wilson*, 2017-Ohio-5724, 93 N.E.3d 1282, ¶ 38. While the state suggests this assignment of error should be reviewed under the plain error standard of review, because appellant invited the error, he cannot now argue plain error. *State v. Rohrbaugh*, 126 Ohio St.3d 3286, 2010-Ohio-3286, 934 N.E.2d 920, ¶ 10.

Victim Impact Trial Testimony

{¶ 54} We next address testimony by A.R. and R.R. regarding the emotional impact of the offenses on A.R. socially, emotionally, and physically. Most of this testimony was cumulative to statements A.R. made in the CAC video. A.R. also described how she "freaked out" when after the events appellant was on trial for occurred, he came to her house to visit his son. T. 245-247. A.R.'s grandfather, her friend F.H, and sister L.R. also testified regarding A.R.'s reaction to appellant's visit to the house. T. 157. However, A.R. discussed the same event in the CAC video shown to the jury as approved by counsel for appellant. We therefore find the testimony was merely cumulative.

{¶ 55} A.R. did testify to a few things that were not contained in the video. Specifically, she stated she struggles with trust and described behaviors brought on by her victimization such as cutting herself, pulling her own hair, and the development of an eating disorder which caused her to lose more than 70 pounds. Appellant failed to object to any of this testimony. We therefore review his challenge for plain error. The Supreme Court of Ohio recently stated:

> Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an

'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.* We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id.* at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 56} *State v. Thomas*, 152 Ohio St.3d 15, 92 N.E.3d 821, 2017-Ohio-8011, ¶¶ 32-34.

{¶ 57} We agree with appellant that the victim impact testimony he now challenges was of no probative value and should have been excluded. However, we do not find plain error. While the matter of the victim impact testimony is subject to a plain error analysis, appellant has failed to raise or argue the existence of plain error here on appeal. The burden is upon appellant to affirmatively demonstrate error on appeal. App.R. 16(A)(7); *State v. Sims* 10th Dist. Franklin No. 14AP-1025, 2016-Ohio-4763, ¶ 10-11. We decline to construct a plain error argument on appellant's behalf. Further, even if that were not true, appellant cannot demonstrate the outcome of his trial would have been any different without the testimony as A.R. gave a clear and consistent accounting of incidences of rape and gross sexual imposition committed by appellant against her. Trial testimony also showed that before the first incident, appellant returned to A.R.'s home under the guise of doing laundry after he knew she was home alone. T. 292-294. Moreover, as discussed above, the majority of the victim impact testimony was cumulative to the video of A.R.'s forensic interview.

{¶ 58} Because appellant has either invited error or failed to demonstrate plain error we overrule his arguments in regard to victim impact testimony from the stand at trial or as contained in A.R.'s CAC video.

Other Acts

{¶ 59} In his final argument under this assignment of error appellant argues the trial court abused its discretion in permitting L.R. to testify to other acts of appellant. Specifically, appellant argues L.R.'s testimony that after she and appellant would fight, he would ask if she was going to tell anyone and then ask for a hug. Appellant argues this testimony was elicited for the sole purpose of bolstering A.R.'s testimony regarding the

same behavior, and to prove his propensity to commit a crime. While we agree the testimony was improper propensity testimony, we also find the error was invited and harmless because the testimony was cumulative to the video of A.R.'s forensic interview wherein A.R. provided the same information.

{¶ 60} Evid.R. 404(B) prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime. Recently, in *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123 at ¶¶ 36-38 the Supreme Court of Ohio stated:

> Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime. Other-acts evidence may, however, be admissible for another non-character-based purpose, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22.
>
> In *Hartman*, we provided a guide for courts to evaluate proposed other-acts evidence to determine whether the evidence connects to a permissible purpose without relying on any improper character inferences. The threshold question is whether the evidence is relevant. Id. at ¶ 24; Evid.R. 401; see also *State v. Williams*, 134 Ohio

St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. As we explained in *Hartman*, the problem with other-acts evidence is rarely that it is irrelevant; often, it is too relevant. *Hartman* at ¶ 25; see 1A Wigmore, Evidence, Section 58.2, at 1212 (Tillers Rev. 1983). In the Evid.R. 404(B) context, the relevance examination asks whether the proffered evidence is relevant to the particular purpose for which it is offered, as well as whether it is relevant to an issue that is actually in dispute. *Hartman* at ¶ 26-27; see also *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

Thus, courts should begin by evaluating whether the evidence is relevant to a non-character-based issue that is material to the case. If the evidence is not premised on improper character inferences and is probative of an issue in the case, the court must then consider whether the evidence's value "is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A); *Hartman* at ¶ 29. Because other-acts evidence " 'almost always carries some risk that the jury will draw the forbidden propensity inference,' " courts should be vigilant in balancing the prejudicial impact of the evidence against its probative value. *Id.* at ¶ 33, quoting *United States v. Gomez*, 763 F.3d 845, 857 (7th Cir. 2014) (en banc).

{¶ 61} Analysis of this issue is complicated for two reasons. First, as discussed above, the jury viewed the portions of A.R.'s CAC interview that defense counsel approved. During the last two minutes of the video, A.R. told the examiner appellant's habit of asking for a hug after a fight was significant to her sister L.R. and why. Neither appellant nor the state mention or address this fact in their brief. Second, Detective Madden testified that during his investigation into this matter, he found this information corroborating and appellant lodged no objection. T. 343-344. The evidence therefore came in without objection in two instances yet appellant challenges the third.

{¶ 62} Over objection L.R. testified the portion of A.R.'s disclosure regarding appellant asking if she was going to tell anyone about the assault and then asking for a hug was significant to her. L.R. explained that after an argument between she and appellant ended, he had a habit of asking "Can I get a hug?" and "Are you going to tell anybody?" T. 298. While the state suggests several permissible reasons for the admission of L.R.'s statements, none are applicable here. Upon review of the record we need not guess as to why the state sought to admit the statements. L.R.'s statements were elicited by the state to demonstrate appellant engaged in this behavior when he did something wrong. The state said exactly that in its closing argument. T. 464. We find therefore, that the statements were improper propensity evidence. But because the same information came in through the CAC video as approved by trial counsel for appellant, and without objection through Detective Madden, we must find any error was invited or harmless.

{¶ 63} If a court finds that evidence was inadmissible under Evid. R. 404(B), the court can still determine that the error was harmless. The Supreme Court of Ohio has held that error is harmless if "there is no reasonable possibility that the evidence may

have contributed to the accused's conviction." *State v. Drew*, 10th Dist. No. 07AP-467, 2008-Ohio-2797. at ¶ 31, quoting *State v. Bayless*, 48 Ohio St.2d 73, 357 N.E.2d 1035 (1976), paragraph seven of the syllabus. Moreover, it is appropriate to find error harmless where there is "either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." *State v. Ferguson*, 5 Ohio St.3d 160, 166, fn. 5, 450 N.E.2d 265 (1983). "When considering whether error is harmless, our judgment is based on our own reading of the record and on what we determine is the probable impact the statement had on the jury." *State v. Drew*, supra, citing *State v. Kidder*, 32 Ohio St.3d 279, 284, 513 N.E.2d 311 (1987).

{¶ 64} As mentioned previously, A.R. gave consistent, unwavering accountings of rape and gross sexual imposition and for the first incident, trial testimony established appellant took advantage of the knowledge that A.R. was home alone. Appellant, on the other hand, was inconsistent in his explanations both at trial and in his statement to Detective Madden during the investigation. T. 344-346. Appellant's statement to A.R. asking her not to tell was admissible evidence, and appellant does not challenge that fact. Asking A.R. not to tell anyone what he did to her demonstrates a consciousness of guilt. We therefore find any error in the admission of L.R.'s statements was harmless.

{¶ 65} The fourth assignment of error is overruled.

V

{¶ 66} In his fifth assignment of error, appellant argues trial counsel rendered ineffective assistance by failing to challenge the Reagan Tokes Act as and unconstitutional violation of the separation of powers doctrine, substantive due process, and the due process clause of the Ohio and United States Constitution. We disagree.

{¶ 67} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 68} This court has recently made its position clear regarding constitutional protections and the Reagan Tokes Act in *State v. Householder*, 5th Dist. Muskingum No. CT2021-0026, 2022-Ohio-1542:

> For the reasons stated in the dissenting opinion of The Honorable W. Scott Gwin in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, we find the Reagan Tokes Law does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in *Wolfe* as the opinion of this Court. In so holding, we also note the sentencing law has been found constitutional by the Second, Third, Sixth, and Twelfth Districts, and also by the Eighth District sitting en banc. See, e.g., *State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-

Ohio-4153; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470. Further, we reject Appellant's claim the Reagan Tokes Act violates equal protection for the reasons stated in *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353.

{¶ 69} Because we have previously found the Reagan Tokes Act is not an unconstitutional violation of the separation of powers doctrine, substantive due process, or due process, we find counsel for appellant did not render ineffective assistance by failing to challenge the act.

{¶ 70} The fifth assignment of error is overruled.

VI

{¶ 71} In his final assignment of error, appellant argues he was denied a fair trial due to cumulative error as set forth in his preceding assignments of error. We disagree.

{¶ 72} In *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. The cumulative error doctrine does not apply, however, where the defendant "cannot point to 'multiple instances of harmless error.' " *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 148 quoting *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).

{¶ 73} In the instant case, we have found only one instance of harmless error. Therefore, the doctrine of cumulative error is inapplicable.

{¶ 74}   The final assignment of error is overruled.

By Wise, Earle, P.J.

Delaney, J. and

Baldwin, J. concur.

EEW/rw